Mendell VAUGHN, et al., Plaintiffs,

Julius R. Smith, Plaintiff-Appellant,

v.

The CITY OF FLINT,
Defendant-Appellee.

No. 83–1368.

United States Court of Appeals,
Sixth Circuit.

Submitted Nov. 14, 1984.

Decided Jan. 23, 1985.

Julius R. Smith, Flint, Mich., for plaintiff-appellant.

Valdemar L. Washington, Jerome O'Rourke, Flint, Mich., for defendant-appellee.

Before LIVELY, Chief Judge; ENGEL, Circuit Judge; and WEICK, Senior Circuit Judge.

LIVELY, Chief Judge.

This is an appeal by a non-party from a summary adjudication of criminal contempt. The appellant filed a *pro se* brief in this court and the case was submitted without oral argument. The attorneys who represented the parties in the district court, and who made the motion that appellant be found in contempt, declined to file briefs or appear in this court.

## I.

The appellant, Julius R. Smith, is a former councilman of the City of Flint, Michigan. He is not an attorney. During his tenure on the City Council the district court entered a consent decree in an action involving the purchase of real estate by the City from residents of an area known as Oak Park. The Oak Park residents, plaintiffs in that action in which the City of Flint was defendant, were represented by attorneys, Valdemar Washington and Gregory Gibbs. Sometime after entry of the consent decree a number of Oak Park resi-

dents concluded that the City was not following the terms of the decree in acquiring property and sought the assistance of Smith, their former councilman.

On August 5, 1982 Smith filed a "Complaint and Request for Temporary restraining order and declaratory judgment" in the district court. This pleading was signed by Smith, "Representing residents," and bore the case number and style of the action in which the consent decree had been entered. At the same time Smith filed a written entry of appearance with the clerk of the district court. On August 26 attorneys Washington and Gibbs filed a motion to "dismiss" all pleadings and papers filed by Smith and to enjoin him from the further practice of law. The motion was accompanied by a notice of hearing and brief. On August 31 Smith filed new pleadings and a notice of hearing on a motion for a temporary restraining order. The new papers, though restructured, made the same basic claim as the ones filed previously. The only substantial change was that two of the Oak Park residents, plaintiffs in the original action, signed this complaint and notice as parties proceeding without representation.

A hearing was set on all motions for September 9 and the clerk notified Smith along with all the attorneys who had appeared in the original action. When the court opened the September 9 hearing by asking if the parties were ready, after the attorneys for the plaintiffs and the defendant identified themselves, Smith announced: "We are ready also. I am here representing the class that has filed." Attorney Washington then requested the court to strike the pleadings prepared by Smith in accordance with the previous motion. In addition, he asked the court to find Smith in contempt of court for engaging in unauthorized practice of law contrary to a Michigan statute. The following colloquy between the court and Smith then took place:

"THE COURT: Well, Mr. Smith, are you an attorney?

"MR. SMITH: No, sir, I am not. I have never purported to be an attorney.

"THE COURT: That is not what I asked you.

"MR. SMITH: No, sir. I am not an attorney, sir.

"THE COURT: Are you a party to this litigation?

"MR. SMITH: I was involved in the—

"THE COURT: (Interposing) Are you a party?

"MR. SMITH: I was a member, Your Honor, of the—

"THE COURT: (Interposing) I say, are you a party to this lawsuit?

"MR. SMITH: No, sir. I am not a party to the suit, sir.

"THE COURT: All right. Well, by what authority do you come before this court saying you represent some of the parties to this lawsuit?

"MR. SMITH: Actually, I filed a pleading with the Court, only as a member of the group that met to ask the Court to consider the grievance.

"THE COURT: What do you mean by that; a member of what group?

"MR. SMITH: The group here that is sitting in the court.

"THE COURT: No. I am asking—Mr. Smith is the only one I am addressing.

"MR. SMITH: I never filed as a plaintiff.

"THE COURT: What?

"MR. SMITH: I never filed papers in this court as any more than a witness.

"THE COURT: You can't file papers in the court.

"MR. SMITH: Yes. I brought them here as a witness to the proceedings. As you might recall, I was there in the Flint Court when you made the ruling. I was also a member of the City Council.

"THE COURT: I don't recall exactly because there were quite a number of people present at that time.

"MR. SMITH: Yes, sir.

"THE COURT: But I think you do look somewhat familiar and I think you were probably present but that doesn't give you any standing to represent anyone in the case, merely because you attended some court proceedings.

"MR. SMITH: I think by the pleadings, sir, you find that I am not represenging [sic] myself as a member of the class or as an attorney, only as an agent who was with the people when we made a decision to address the Court and we have not said that we were attorneys or anything more than a witness to this proceeding.

"I was also, as you might recall, a City Councilman who was involved in the decision that was made in this case and it was on my word as well as the attorney's words that the suit was filed.

"THE COURT: Well, that is another matter now. That isn't before me now. And I do have here—there have been filed in this case a document entitled Complaint and Request for Temporary Restraining Order and Declaratory Judgment. Now, this bears your signature, I presume. Is the name Julius R. Smith who signed this document?

"MR. SMITH: Yes. May I attach it—

"THE COURT: (Interposing) Just a minute, please. Let me address you. Then I will call you if I need to have you say anything.

"MR. SMITH: Thank you.

"THE COURT: This document purports to bear your signature. Does it; is it your signature?

"MR. SMITH: I don't know which one you are looking at, sir.

"THE COURT: Well, I am looking at the document I just referred to, Complaint and Request for Temporary Restraining Order and Declaratory Judgment. It was filed from this court on August 5, 1982. There is a signature on it. Mr. Smith, is that signature— —come up here, will you please?

"MR. SMITH: Yes, sir.

"THE CLERK: Is that signature yours?

"MR. SMITH: Yes, sir.

"THE COURT: All right, now, that is signed over the statement, representing residents and then it bears an address, I presume as your address, 522 Green, Flint, Michigan. Is that right?

"MR. SMITH: Yes, sir.

"THE COURT: Now, there has also been filed in this case an amendment. I don't have the document in front of me but in the docket sheet it shows that you entered an appearance filed in this court as a representative of Oak Park residents. Did you?

"MR. SMITH: Sir, I don't know which one you are speaking about now.

"THE COURT: I am speaking about the appearance that you— —I am asking you if you did file an appearance in this case.

"MR. SMITH: I did appear but I think that the pleading that was filed was on behalf of other plaintiffs, not myself. I just filed it for them.

"THE COURT: Well, you signed an appearance, did you, and filed it in this court?

"MR. SMITH: I believe I did, sir, on the first appearance.

"THE COURT: That was August 5.

"MR. SMITH: August 5, yes, sir.

"THE COURT: Well, by what authority do you do this or what legal authority do you have for filing an appearance in this court on behalf of any party to this lawsuit?

"MR. SMITH: Well, I filed the original proceeding subsequent to a meeting that was held by the residents, only as a party to the meeting. Not as a party to the suit. It was decided by the residents that they wanted to file because they were told by the attorneys and by the Court that they could file because you had a continuing jurisdiction in the case and it was not necessary that they had to have an attorney to do that, that any member of the class could.

"THE COURT: By what authority do you say that, that they don't have to have an attorney to represent them?

"MR. SMITH: The attorney, Valdemar Washington, is supposed to be representing these people and he has stated this at the City Council meeting, because the people along with myself did go to the City Council meeting and ask them to hear the grievance prior to coming to this court, and at that time he informed the people that you had a continuing jurisdiction.

"THE COURT: Now you are going to try to get into the merits of what took place or proceeding that took place prior to the entry of the consent judgment, are you?

"MR. SMITH: No, no. This was after the consent judgment, sir. This was just a few days before we filed the Complaint.

"MR. WASHINGTON: Your Honor, if I may address the Court.

"THE COURT: Sit down in back of the attorney. That is reserved inside the railing for parties and their attorneys.

"MR. SMITH: Thank you."

Attorney Washington then stated that he had informed the dissatisfied Oak Park residents that he represented the entire class and could not represent individual residents who felt aggrieved. He said he had advised those class members who were dissatisfied to seek competent counsel to represent them and file a motion in the district court "seeking its direction." Washington thereafter renewed the motion to strike the pleadings and hold Smith in contempt.

In response to attorney Washington's motion the district court then found that Smith had engaged in the unauthorized practice of law by preparing and filing pleadings on behalf of others and by his appearance at the hearing. After noting Michigan statutes governing the practice of law the court read into the record its local rule 12(f):

Any person who, while not duly admitted to the Bar of this Court, or during his disbarment or suspension, exercises any of the privileges of a member of this Bar, or who pretends to be entitled so to do, may be found guilty of criminal contempt of Court and subject to appropriate punishment therefor.

Immediately following this recitation, the judge stated, "I think this imposes a duty on the Court to act in this case and it seems clear to the Court that Mr. Smith in the preparation of this document entitled Complaint and so forth and by filing an appearance in this court is attempting to practice law in this court in this case." He then granted the motion to strike pleadings and stated, "it appears that he is in contempt of this Court."

The court then invited "members of the plaintiff's class" to speak if they desired. As Rev. Robert Rawls, one of the plaintiffs who had signed the pleadings filed on August 31 went forward, Smith whispered something to him. The court stated, "Now, let the record show that as this gentleman came up the aisle, Mr. Smith whispered something to him. I resent that." Rawls attempted to explain to the court that Smith told him to let the court know that the latter pleadings were filed for him, Rawls, and Luther Moore. In response the court then consulted the record and apparently realized for the first time that the second complaint had been filed by Rawls and Moore on their own behalf. Rawls and Moore then attempted to explain their dissatisfaction with the way the consent decree was being carried out. When asked by the court how Smith got into the case, Moore stated that Smith had been the councilman of the Oak Park residents and had continued to try to help them. Moore said it was "kind of hard to already have an attorney [Washington and Gibbs represented the plaintiff class] and then you have got to go and get one to represent us against the ones who are supposed to be representing us."

After announcing that since Smith had violated local rule 12(f), he "may be found guilty of criminal contempt of the court and subject to appropriate punishment therefor," the court permitted Smith to speak. The court adjourned the hearing at the end of his statement and a brief ensu-

ing colloquy, which are set out in pertinent part:

MR. SMITH: Yes, sir. I want to thank you, Your Honor, for allowing me to speak. I did not come here to act as a counsel or representative. I think that is sort of a mis-spoken word. The only reason that I appeared with these people is that some of them have a little difficulty explaining themselves as you might have heard and I am here because I was told to come here after calling the court, trying to get clarification on how we could proceed. I did not come here to pretend to be counsel for them or to be a representative per se but simply want to act as a witness in their behalf. In the first pleadings that were filed after that, the Court objected to them after I called here, and that was objections made to them. I filed the other papers, simply in filing wrote down the things that they wanted to say, and there was no charge. As a matter of fact, I have driven over here in my car. I have come here three times now and I ask the Court, what does the people need to do, what do they need to get heard? That was the reason I came here. I didn't come here to practice law.

The second pleadings were filed after being instructed by the Court that I would have to file, we would have to file in the name of somebody that was members of the class. The first pleadings, so far as I knew, were never responded to. It was only the second pleadings that were filed on behalf of Mr. Moore and Mr. Rawls that brought us to this court today. The pleadings that we are dealing with now, we [sic] never even answered.

\* \* \* \* \* \*

And at the meeting, it was discussed about what the people wanted to do and obviously being a little more familiar with it, I voluntarily said, well, I will do this for you in order that you might be heard. That is the only reason I am here.

THE COURT: All right, your statement is on the record and I have ruled and that is all I care to do about this at this point, sir.

## II.

On September 16 the district court filed an order striking all papers prepared or filed by Smith, finding him in criminal contempt, and enjoining him from any attempted future practice of law. The same day attorneys Washington and Gibbs filed a motion to require Smith to show cause why he should not be punished for criminal contempt and the court entered a show cause order on September 21. Prior to the show cause hearing Smith filed a motion for the district judge to disqualify himself on grounds of bias. This motion was denied at the hearing and the court permitted Smith to speak to the show cause order. Smith argued that the summary contempt proceedings had not been conducted in accordance with the applicable federal rule of criminal procedure (Fed.R.Crim.P. 42) and that it had not been proven beyond a reasonable doubt that he "acted culpably and in willful disregard, or disobedience of the authority of the Court." He then stated:

I have committed none of these acts, your Honor. I don't know any contemplated contempt. Any notion that anybody has at this point that says that I acted in contempt certainly is not grounded on any element of culpability or willful disregard. If I did anything wrong I did so in ignorance obviously. I consulted with the Court at all points in the proceedings that we brought. I consulted with the Court asking if this was all right, or that was all right. I was summoned to the Court. I did not willfully disobey or disrespect this Court. In fact I came to this Court out of respect because I felt, and as the people that we brought here felt, that they had been defrauded and that the Court was unaware of it and our purpose for coming here was to make the Court aware \* \* \*.

The district court noted that in *United States v. Peterson*, 550 F.2d 379 (7th Cir.

1977), the unauthorized practice of law was deemed "misbehavior" punishable as criminal contempt under 18 U.S.C. § 401(1). The district judge then imposed on Smith a fine of $500 to be paid to the government, or five days in custody of the United States Marshal if the fine was not paid within 30 days. Smith filed a motion for reconsideration which the district court denied in an order accompanied by a memorandum opinion. In the memorandum the court noted that Smith had been guilty of unauthorized practice of law both in preparing and filing pleadings and in appearing before the court as a representative of the objecting plaintiffs. However, since only the court appearance took place in the presence of the court, that could be the only basis of the summary finding of contempt.

## III.

### A.

The power of federal courts to punish for contempt is contained in 18 U.S.C. § 401 (1982):

### § 401. Power of court

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

The criminal contempt procedures are set forth in Rule 42, Fed.R.Crim.P.:

### Rule 42. Criminal Contempt

(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

In this case the district judge made it clear, both in his oral statements from the bench and in his written orders and memorandum, that he acted pursuant to § 401(1) and Rule 42(a). He followed the summary disposition procedures for misbehavior in the presence of the court.

The power to punish for contempt is an inherent attribute of judicial office. This fact was recognized by the first Congress which granted the federal courts authority to punish for contempt in the Judiciary Act of 1789. The language of the 1789 statute was very broad. In order to curb perceived abuses under the 1789 Act Congress enacted the forerunner of § 401 in an Act of March 2, 1831, which "substantially curtailed" the previously undefined power of federal courts in matters of criminal contempt. *Nye v. United States*, 313 U.S. 33, 45–48, 61 S.Ct. 810, 814–815, 85 L.Ed. 1172 (1941). Even this "substantially curtailed" power has been further limited by Supreme Court decisions. The Court wrote

in *In re Michael*, 326 U.S. 224, 227, 66 S.Ct. 78, 79–80, 90 L.Ed. 30 (1945):

> True, the Act of 1831 carries upon its face the purpose to leave the courts ample power to protect the administration of justice against immediate interruption of its business. But the references to that Act's history in the *Nye* case, *supra*, reveal a Congressional intent to safeguard Constitutional procedures by limiting courts, as Congress is limited in contempt cases, to "the least possible power adequate to the end proposed." *Anderson v. Dunn*, 6 Wheat. 204, 231 [5 L.Ed. 242]. The exercise by federal courts of any broader contempt power than this would permit too great inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave determination of guilt to a judge rather than a jury.

Imposing a further limitation on use of the "drastic procedures" of summary criminal contempt powers, the Court has held that an "actual obstruction of justice" must "clearly be shown." *In re McConnell*, 370 U.S. 230, 234, 82 S.Ct. 1288, 1291, 8 L.Ed.2d 434 (1962). With reference to the summary procedures permitted by Rule 42(a), the Court stated in *Harris v. United States*, 382 U.S. 162, 164, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965):

> Rule 42(a) was reserved "for exceptional circumstances," *Brown v. United States*, 359 U.S. 41, 54 [79 S.Ct. 539, 548, 3 L.Ed.2d 609] (dissenting opinion), such as acts threatening the judge or disrupting a hearing or obstructing court proceedings. *Ibid.* We reach that conclusion in light of "the concern long demonstrated by both Congress and this Court over the possible abuse of the contempt power," *ibid.*, and in light of the wording of the Rule. Summary contempt is for "misbehavior" (*Ex parte Terry*, 128 U.S. 289, 314 [9 S.Ct. 77, 83, 32 L.Ed. 405]) in the "actual presence of the court." Then speedy punishment may be necessary in order to achieve "summary vindication of the court's dignity and authority." *Cooke v. United States*, 267 U.S. 517, 534 [45 S.Ct. 390, 394, 69 L.Ed. 767].

**B.**

In *United States v. Seale*, 461 F.2d 345, 366–67 (7th Cir.1972), the court identified four elements required to support a contempt conviction under § 401(1): (1) There must be conduct which constitutes "misbehavior"; (2) the misbehavior must amount to an "obstruction of the administration of justice"; (3) the conduct must occur in the court's presence; (4) there must be some form of intent to obstruct. The minimum requirement for establishing intent was described as proof of "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *Id.* at 368. Most courts appear to agree on these four essential elements, which have been defined variously in different opinions. For example, in *United States v. Warlick*, 742 F.2d 113, 116 (4th Cir.1984), the court defined obstruction of the administration of justice as "some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." The *Warlick* court adopted *Seale's* definition of intent: a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful. The same court in *In re Chaplain*, 621 F.2d 1272 (4th Cir. en banc), *cert. denied*, 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980), held that use of summary contempt procedures is limited to "exceptional circumstances involving acts 'threatening the judge or disrupting a hearing or obstructing court proceedings.'" *Id.* at 1277, quoting *Harris v. United States*, 382 U.S. at 164, 86 S.Ct. at 354. As in *Warlick*, the *Chaplain* court accepted the *Seale* "volitional act" definition of required intent.

■ This court dealt with the requirements for a summary conviction for criminal contempt in *United States v. Schiffer*, 351 F.2d 91 (6th Cir.1965), *cert. denied*, 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966). In *Schiffer* the court described remarks found to constitute criminal contempt as follows:

> They were calculated to provoke and to bring undue pressure upon the Court in

the making of various rulings during the course of the trial. They delayed the trial, obstructed the administration of justice and interfered with the Court in the performance of his judicial duties. *Id.* at 94. The use of the word "calculated" implies a requirement that the act be done with a purpose to obstruct. This requirement was made explicit in *TWM Manufacturing Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1272 (6th Cir.1983), where we wrote:

In criminal contempt, willful disobedience must be proved beyond a reasonable doubt. *United States v. Powers*, 629 F.2d 619, 626 n. 6 (9th Cir.1980); *United States v. Greyhound Corp.*, 508 F.2d 529, 531 (7th Cir.1974). Willfulness, for this purpose, implies a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir.1983).

## IV.

### A.

The district judge in this case was required to deal with a confusing set of circumstances. Much of the confusion arose from the fact that the Oak Park residents attempted to obtain relief from a court without the help of a lawyer. We must observe that the attorneys who represented the plaintiff class, which included the objectors Rawls and Moore, could have helped the district court by explaining the disagreement which had led the Oak Park residents to return to court. Obviously, they were not required to make arguments for these parties who were dissatisfied with the way the consent decree was being carried out. However, they were aware of the source of the disagreement and could have clarified the issue for the court. It is clear from the record that the court considered only the first set of pleadings signed and filed by Smith until Smith finally called to the court's attention the fact that a later set was filed by Rawls and Moore seeking the same relief. If the court had understood from the beginning that there were

pleadings before it in which the objecting plaintiffs sought to proceed *pro se*, its view of Smith's attempt to "represent" these parties might have been different.

### B.

■ The district court made no specific findings on three of the four elements required for a summary adjudication of criminal contempt. It merely found that Smith engaged in the unauthorized practice of law in the court and that this was "misbehavior" for purposes of contempt. The court then stated that local rule 12(f) imposed a duty on him to act. That rule provides that a person not admitted to the bar who exercises any of the privileges of a lawyer *"may* be found guilty of criminal contempt of court...." (Emphasis added). Rule 12(f) does not require a finding of criminal contempt, but uses discretionary language. If the district court interpreted the rule as mandating a finding of criminal contempt without further inquiry upon determining that Smith had engaged in the unauthorized practice of law, we believe he misconstrued the rule. The cases we have cited make it clear that a finding of "misbehavior" is just the first step in summary criminal contempt proceedings. The record must establish the existence of the other three elements as well.

■ The second requirement is that there be an obstruction of the administration of justice. This must be an actual, not a theoretical obstruction. *In re McConnell*, 370 U.S. at 234, 82 S.Ct. at 1291; *In re Brown*, 454 F.2d 999, 1004–05 (D.C.Cir. 1971). Smith's appearance in the case certainly caused confusion and delay in the proceedings. It is not necessary in order to constitute an obstruction that the acts have an "element of violence, physical force, or vituperation." *Chaplain*, 621 F.2d at 1277. Smith's attempt to represent the objecting plaintiffs was an obstruction of the administration of justice. Therefore, if all the other elements were present, Smith could have been found in criminal contempt of court.

The third requirement for a summary criminal contempt conviction is that the act take place in the presence of the court. The district court relied only on Smith's in-court appearance and his announcement that he represented the objecting plaintiffs. Smith attempted to explain that he appeared in court because he was notified by the clerk to do so. Nevertheless, he was notified because he had filed pleadings as a representative of these parties. We think it is clear that Smith's "misbehavior" in appearing and attempting to represent litigants before the court was an act which took place in the presence of the court, and the third element was satisfied.

■ The final requirement for a criminal contempt conviction is that the misbehavior be committed with the necessary intent. The district court made no finding with regard to Smith's intent or any "willfulness" on his part. This court requires that willful disobedience be proved beyond a reasonable doubt and defines willfulness as "a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation." *TWM Manufacturing Co.*, 722 F.2d at 1272. Though the opinion in *TWM Manufacturing Co.* was issued after the adjudication in the present case, it did not announce new principles. The requirement of intentional misconduct was implicit in earlier cases, including *Schiffer*, and has been explicitly adopted by many courts since *Seale*.

■ Viewing the evidence in this case in the light most favorable to the district court's holding, we conclude that there is insufficient evidence to sustain the adjudication of criminal contempt since proof of the requisite intent is lacking. When first permitted to speak, Smith said, "I did not come here to act as counsel or representative." He then said he did not come to court "to pretend to be counsel for them or to be a representative per se but simply want to act as a witness in their behalf." After explaining his efforts on behalf of the objecting plaintiffs and his presence in court at that time, Smith reiterated, "I didn't come here to practice law." No evidence in this record supports a finding that Smith deliberately or intentionally violated local rule 12(f) by appearing at the September 9 hearing and announcing that he represented some of the parties. Attorneys Washington and Gibbs, who first asked that Smith be held in contempt, offered no proof in support of their request and the only evidence, from Smith himself, is to the contrary. Further, the total record refutes any inference of a deliberate and intentional effort to show disrespect for the court or to obstruct its proceedings.

We sympathize with the district judge who was required to deal with parties who lacked proper representation and who were unable to articulate their grievance clearly. However, his order striking the pleadings and dismissing the cause disposed of the pending case and thereafter, given all the circumstances, there was no need for "summary vindication of the court's dignity and authority." *Harris v. United States*, 382 U.S. at 164, 86 S.Ct. at 354. This court, in common with many others, recognizes as a "fundamental principle of the law of contempt" that a court "must exercise only the 'least possible power adequate to the end proposed.' " *United States v. Johnson*, 736 F.2d 358, 362 (6th Cir.1984) (Quoting *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966); *In re Michael*, 326 U.S. 224, 227, 66 S.Ct. 78, 79, 90 L.Ed. 30 (1945); and *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 230, 5 L.Ed. 242 (1821)). Application of this principle to the present case compels the conclusion that some sanction less severe than conviction for criminal contempt would have been adequate.

The judgment of criminal contempt and the punishment imposed therefor are reversed.