UNITED STATES of America,
Plaintiff,

v.

Bruce YOUNG, Defendant.

No. CR–3–00–034(01).

United States District Court,
S.D. Ohio,
Western Division.

Oct. 18, 2001.

Margaret Quinn, Dayton, OH, for plaintiff.

Beth Goldstein Lewis, Mason, OH, for defendant.

ENTRY FINDING DEFENDANT IN DIRECT, CRIMINAL CONTEMPT OF COURT FOR ACTIONS OCCURRING ON DECEMBER 18, 2000, AND JULY 20, 2001; ENTRY VACATING FINDING OF COMPETENCY MADE ON JULY 17, 2001; DEFENDANT REMANDED TO A FEDERAL MEDICAL CENTER, PURSUANT TO 18 U.S.C. § 4241, IN ORDER TO DETERMINE HIS COMPETENCY TO STAND TRIAL; ENTRY REVOKING DEFENDANT'S RIGHT OF SELF–REPRESENTATION PURSUANT TO *FARETTA V. CALIFORNIA*, 422 U.S. 806 (1975); CHARLES A. SMILEY JR., REMOVED AS DEFENDANT'S LEGAL ADVISOR AND REAPPOINTED AS HIS COUNSEL OF RECORD; SPEEDY TRIAL FINDING

RICE, Chief Judge.

During proceedings conducted in open court on December 18, 2000, and July 20, 2001, the Defendant went berserk, to put it quite mildly. Pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure, the Court finds the Defendant in direct, criminal contempt for his actions on each of those days. The Court begins its explanation of those findings by reviewing the Defendant's conduct on the two days in question.

During the in-court proceeding conducted on December 18, 2000, the Court, counsel and the Defendant were discussing a trial date for this prosecution. The Defendant was quite adamant in his belief that a trial should be conducted sooner than the following April, as then anticipated. When the Court asked Government's counsel about her availability for a possible trial in February, 2001, she responded that she had inadvertently left her calendar at

home. Transcript of Proceeding of December 18, 2000 (Doc. # 164) at 12–13. At that point the Defendant went berserk:

Defendant: This is wrong, your Honor. This is wrong. This is wrong.

Court: Mr. Young?

Defendant: This is wrong. It's bull shit too.

Court: All right. Mr. Young, you have just earned yourself an extra six months.

Defendant: I've got 52 fucking years coming man. I mean, what does another fucking day mean?

Court: Get this man out of here, immediately.

Defendant: The bitch has me pinned in a five-by-seven box for nine fucking months. This is bull shit.

Court: We are in recess.

Defendant: Hateful bitch.

Courtroom Deputy Clerk: All rise.

Defendant: Fuck this court. Fuck this court. Fuck you and I won't be back, you bitch. You're playing goddamn games.

Marshal: Calm down.

Defendant: Fuck the constitution, you assholes. Fucking wipe on a mother fucker. That's what you can use it for— (Defendant continued screaming "F" word comments as leaving courtroom and into the hall).

*Id.* at 13–14.

On July 17, 2001, the Court engaged in a colloquy with the Defendant, required by *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and permitted him to represent himself, despite his outrageous behavior during the

proceedings of the previous December 18th. *See* Transcript of Proceedings of July 17, 2001 (Doc. # 165) at 6–16. The Defendant again appeared in open court, on July 20, 2001, accompanied by his legal advisor, to discuss a number of topics, including the mechanics of providing him discovery materials to review in preparation for his trial. The Court explained that it did not want the Defendant to have the discovery materials in the jail, where he has been incarcerated prior to trial, lest those materials become circulated throughout the jail and compromise pending prosecutions. Consequently, the Court suggested that those materials be made available to the Defendant for his review in the office of the United States Marshal. The Defendant refused to participate in that process. *See* Transcript of Proceedings of July 20, 2001 (Doc. # 166) at 20.[1] Shortly thereafter, the Defendant again entered into what seemed to this layperson as nothing less than a psychotic rage:

Defendant: Your Honor, can I go back to the jail? I am about to have an anxiety attack. I can't go on with this shit. Have the marshals take me back before I do something stupid. I'm being nice. Can I please go back.

Court: Well, I appreciate the advance warning.

Defendant: I'm telling, your Honor, I know myself.

Court: Marshals, if you would.

Defendant: I know myself. This is crazy. I can't have my fucking discovery packet. What kind of shit is that? Shit. God. You mother fuckers.

---

1. During that proceeding, the Court, counsel and the Defendant were discussing the best case scenario for sentencing, if the Defendant were to plead guilty, and the worst case, if he were to go to trial and be convicted on all charged offenses. The Court indicated that the portion of the transcript of that proceeding containing that discussion would be filed under seal. *See* Doc. # 166 at 9–10. Upon reflection, the Court has concluded that there is no need to file that portion of the transcript under seal and has ordered the court reporter to file the entirety of the transcript as part of the public record.

Court: Once again Mr. Young—

Defendant: You fucked-up asshole. You Jew bitch and bastard.

Court: You've earned yourself another six months.

Defendant: Fuck you. Kiss my dick. I'm not going to have my discovery packet. You've got me fucking bent, you bitch, mother fucker. Kiss my ass. You too, Chema. You dick sucking little faggot.

*Id.* at 21–22.

 Rule 42(a) of the Federal Rules of Criminal Procedure authorizes District Courts to find an individual in direct, criminal contempt. Rule 42(a) provides:

(a) *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

In *Vaughn v. City of Flint*, 752 F.2d 1160 (6th Cir.1985), the Sixth Circuit identified the four elements of contempt under Rule 42(a):

There must be conduct which constitutes misbehavior; (2) the misbehavior must amount to an obstruction of the administration of justice; (3) the conduct must occur in the court's presence; (4) there must be some form of intent to obstruct. The minimum requirement for establishing intent was described as proof of a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.

*Id.* at 1168 (internal quotation marks and citation omitted). *See also, In re Chandler*, 906 F.2d 248, 249 (6th Cir.1990). For reasons which follow, this Court finds that Defendant's conduct on December 18th and on July 20th established each of those elements, beyond a reasonable doubt.

*First,* it cannot be questioned that the Defendant's conduct on each date constitutes misbehavior. *Second,* in *Vaughn,* the Sixth Circuit held that misbehavior amounts to an obstruction of the administration of justice, if it "will interrupt the orderly process of the administration of justice, or thwart the judicial process." 752 F.2d at 1167 (internal quotation marks and citation omitted). Causing delay in a proceeding can also constitute an obstruction of the administration of justice. *Id.* at 1168. On both December 18th and July 20th, Defendant's misbehavior interrupted the orderly process of the administration of justice and caused delay, given that on each occasion the Court was forced to suspend a proceeding because of the Defendant's misbehavior. *Third,* the Defendant's misbehavior on each day occurred in the presence of the Court. *Fourth,* on both days, the Defendant acted with the intent to obstruct, since on each occasion he engaged in a volitional act which he knew, or reasonably should have known, was wrongful.

Accordingly, the Court finds the Defendant in direct, criminal contempt for his conduct on December 18, 2000, and in direct, criminal contempt for his actions on July 20, 2001. Sentence will be imposed at a later date.

 After the Defendant had engaged in his contemptuous behavior on December 18, 2000, the Court questioned whether he was competent to stand trial. However, rather than sending him to a federal medical facility for the purpose of a thorough competency examination, the Court permitted the Defendant to be examined locally. Based upon the results of that brief examination and its colloquy with the Defendant and his counsel, the Court, on July 17, 2001, found that the Defendant was competent to stand trial. *See* Doc. # 165 at 3–6. Based upon the

Defendant's misbehavior on July 20, 2001, this Court once again questions whether the Defendant is competent to stand trial. In other words, the Court has "reasonable cause to believe that the [D]efendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The Defendant has engaged in disruptive and contemptuous behavior during two proceedings conducted in open court. It appears that he is the epitome of rationality and calmness, until one has the temerity either to disagree with him or not to give him what he thinks is his due at any given moment. The result is the conduct exemplified by the above excerpts of his court appearances on December 18, 2000 and July 20, 2001. Although the Defendant was examined by a psychologist after the first such incident, that examination was by no means thorough. The Defendant's outbursts in court raise the real possibility that he does not have the present competency to stand trial, in other words "to understand the nature and consequences of the proceedings against him [and] to assist properly in his defense." 18 U.S.C. § 4241(a). Accordingly, the Court vacates its finding that the Defendant is competent to stand trial. The Defendant is remanded to the custody of a federal medical center for the purpose of a thorough psychiatric and/or psychological examination, pursuant to 18 U.S.C. § 4241(b), in order to determine whether he is presently competent to stand trial.

As is indicated above, this Court, on July 17, 2001, after a colloquy with the Defendant, permitted him to represent himself, in accordance with *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Therein, the United States Supreme Court held that the Sixth Amendment provides to a criminal defen-

dant the right of self-representation. For reasons which follow, this Court revokes that right, because of his contemptuous behavior on July 20, 2001, which was a repetition of similar conduct which had occurred on the previous December 18th.

The right of self-representation is not absolute. In *Faretta,* the Supreme Court wrote:

We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. See *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. See *United States v. Dougherty,* 154 U.S.App.D.C. 76, 87–89, 473 F.2d 1113, 1124–1126.

422 U.S. at 834 n. 46, 95 S.Ct. 2525. *See also, McKaskle v. Wiggins,* 465 U.S. 168, 173, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (explaining that it had held in *Faretta* that "an accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol").

Appellate courts have applied those principles to decide that a District Court did not err in terminating a defendant's self-representation under *Faretta.* In

*United States v. West,* 877 F.2d 281, 287 (4th Cir.), *cert. denied,* 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989), the Fourth Circuit concluded that the District Court had properly terminated defendant's right to self-representation, because he had flouted his responsibility to act as officer of court by characterizing the district court as the "home team" on side of the government during his opening statement. In *United States v. Brock,* 159 F.3d 1077 (7th Cir.1998), the Seventh Circuit concluded that the District Court had not abused its discretion in terminating the defendant's right to proceed pro se. Therein, the defendant, after having been afforded the right to represent himself, had demanded a bill of particulars and, when his request was denied, refused to answer questions put to him by the Magistrate Judge. The Seventh Circuit, relying upon the above-quoted footnote from *Faretta* and *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), holding that a disruptive defendant can forfeit his right to attend his trial, affirmed the decision of the District Court to terminate the defendant's right of self-representation. The disruptive behavior of the defendant in *Brock* pales when compared to Young's actions. For example, on July 20th, the Defendant demonstrated that he is without the ability to control himself, when he does not get his way. The genesis of Defendant's contempt on that date was a dispute with the Court over whether he would be permitted to review discovery materials in the jail or whether he would be required to conduct such a review in the office of the United States Marshal.[2] When it became apparent that the Court would insist that the Defendant, at least, attempt to review the discovery materials in that office, he went berserk. It bears emphasis that July 20th was merely a repetition of the type of misbehavior in which the Defendant had engaged on December 18, 2000. Thus, the Defendant has demonstrated that he is either unable or unwilling to abide by the rules of courtroom protocol. *McKaskle, supra.* Moreover, the Defendant's trial is anticipated to last three weeks. During that period of time, the Court will undoubtedly make a number of rulings with which the Defendant will not agree. *Faretta* does not require this Court to conduct a trial in which there is the distinct possibility, if not probability, that, whenever he disagrees with a ruling of the Court, the Defendant will become hysterical and disrupt proceedings by spewing foul language and vulgarities.

Based upon the foregoing, the Court revokes the Defendant's right of self-representation. As a consequence, the Court removes Charles A. Smiley, Jr., as Defendant's legal advisor, and reappoints him as counsel of record for the Defendant.

■ Given the age of this prosecution, the Court will briefly set forth its reasons for believing that the speedy trial clock has not expired. *See* 18 U.S.C. § 3161 *et seq.* On July 20, 2001, the Government filed a document, indicating that, although the speedy trial clock was not running on that date, as a result of the agreement between the parties that the Defendant's trial would commence on September 17, 2001, that clock would expire on October 1, 2001, if the Defendant were not brought to trial on September 17th. *See* Doc. # 136. For present purposes, the Court accepts the Government's computations. However, events occurring after July 20th have prevented the speedy trial clock from expiring, even though Defendant's trial did

---

**2.** Given that the Defendant was in custody, the Court promised him that he would be given as much time, on a daily basis, as he required to review the discovery materials in the Marshal's office. In addition, the Court assured the Defendant that the Marshals would accommodate his needs when he was in their office reviewing those materials.

not commence on September 17th. On August 7, 2001, the Defendant filed a motion challenging the Government's speedy trial calculation and requesting a hearing on that motion. *See* Doc. # 145. The Court has neither conducted a hearing nor ruled upon that motion. In addition, on September 17, 2001, the Government filed a motion, requesting that the Court convene a pretrial conference. *See* Doc. # 154. The Court has not ruled upon that motion.

Under 18 U.S.C. § 3161(h)(1)(F), the period of delay, from the date a motion is filed through the completion of the hearing on it, is excludable. Under 18 U.S.C. § 3161(h)(1)(J), the filing of *any* pretrial motion will stop the running of the speedy trial clock and afford the District Court 30 days, after it is "actually under advisement," in which to rule on it. In *United States v. Jenkins*, 92 F.3d 430 (6th Cir. 1996), the Sixth Circuit rejected the argument that some pretrial motions do not toll the running of that clock:

> On August 15, Jenkins filed a Motion to Seal a copy of a letter that he sent to the United States Attorney's office relating to "prior bad acts" of a codefendant. Jenkins writes in his brief to this court, without citation, that "the above motion should not toll the running of the time in which the defendant must be tried." Appellant's Br. at 28. Jenkins may be arguing that the motion is simply not important enough to toll the speedy trial clock, but there is no authority for excluding some pretrial motions on the basis that they do not require a significant amount of thought or attention by the court. *See Mentz*, 840 F.2d at 327 n. 25 ("Congress could have attacked the

many problems raised by the different varieties of pretrial motions and given separate consideration to them. Wisely, it avoided such a morass and extended the exclusion to 'any pretrial motion,' without distinguishing among them"). The defendant's motion was not granted until November 23. Although the entire period that the district court took to decide the matter is not excludable, the first thirty days clearly are. The Motion to Seal thus results in the exclusion of the thirty days from August 16 to September 15.

*Id.* at 440. *See also, United States v. Bruce*, 1996 WL 640468, 100 F.3d 957 (6th Cir.1996) (motion to extend time in which to file motions tolls the running of the speedy trial clock); *United States v. Davenport*, 935 F.2d 1223, 1231 (11th Cir.1991) (speedy trial clock tolled by co-defendant's motion to travel outside judicial district in which prosecution was pending); *United States v. Mentz*, 840 F.2d 315, 327 (6th Cir.1988) (speedy trial clock tolled by defendant's motion to permit his parents to visit him in jail); *United States v. Wilson*, 835 F.2d 1440, 1442–43 (D.C.Cir.1987) (speedy trial clock tolled by defendants' motions to modify conditions of pretrial release and to permit a tape recorder in a cell block).

Since the Court has neither conducted a hearing nor ruled on the Defendant's motion and, further, given that the Court has not ruled upon the motion filed by the Government, the speedy trial clock did not begin to run again, when the Defendant's trial did not commence on September 17, 2001.[3] In addition, given that the Court has remanded the Defendant to the custo-

---

3. In accordance with the parties' agreement, the speedy trial clock was stayed when the Defendant filed his motion on August 7, 2001, challenging the Government's speedy trial calculation and seeking a hearing on that issue; therefore, the filing of that motion did not stop the running of the clock. However, its pendency, along with the motion filed by the Government on September 17th, prevented the speedy trial clock from beginning to run again, when the Defendant was not brought to trial on that date.

dy of a federal medical facility for the purpose of a thorough psychiatric and/or psychological evaluation, in order to determine whether he is competent to stand trial, the time from this date, through the date, if ever, upon which the Court is able to find the Defendant competent to stand trial, is excluded from the speedy trial computation. *See* 18 U.S.C. § 3161(h)(1)(A).