UNITED STATES of America, Appellee,

v.

Hal J. WARLICK, Appellant.

No. 83–5291.

United States Court of Appeals,
Fourth Circuit.

Argued May 11, 1984.

Decided Aug. 13, 1984.

Kermit S. King, Columbia, S.C. (King & Cobb, Columbia, S.C., on brief), for appellant.

David J. Slattery, Asst. U.S. Atty., Columbia, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge and BUTZNER, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

Appellant, an attorney, appeals his conviction of criminal contempt following a bench trial. He asserts that the trial judge committed an error of law in finding him guilty under 18 U.S.C. § 401(1) and (3)[1] because his behavior did not obstruct the administration of justice and was not committed in the court's presence. Finding that appellant's misbehavior was in the presence of the court and that it did obstruct the administration of justice, we affirm.

## I

On July 26, 1983 the United States District Court for the District of South Carolina, Greenville Division, was conducting jury trials when a deputy United States marshal reported to the judge that members of a petit jury panel had reported to him that they had been contacted by a private investigator prior to reporting for jury service. The court immediately ordered an investigation by the United States Marshal's Office and the Federal Bureau of Investigation. Following a preliminary report from the investigators the court issued a rule to show cause directing appellant and another attorney to show cause why they should not be held in criminal contempt for employing a private investigator who reportedly personally contacted jurors and members of the jurors' families knowing that said jurors had been selected for the July term of court in the Greenville Division. Following a continuance requested by appellant, the matter came on for trial on August 12, 1983. At the conclusion of the trial the court found appellant guilty of violating 18 U.S.C. § 401(1) and (3). Thereafter the court issued a written order setting forth its findings of fact and conclusions of law.

We summarize the facts. Hal J. Warlick was admitted to the Bar of the State of South Carolina in 1971 and has engaged in the general practice of law since that time. He served for several years as City Court Judge in Liberty, South Carolina and conducted jury trials for minor offenses. In February 1983 Warlick, representing the plaintiff, filed an action entitled *Herbert v. Overnight Transportation Co.*, in the Greenville Division of the United States District Court and this case was set for a jury trial during the July 1983 term of court. The jury venire for the July 1983 term was made available to all attorneys at the office of the Clerk of the Court on June 28, 1983. A jury was selected in the *Herbert v. Overnight Transportation Company* case on July 11, 1983 with attorney Warlick selecting the jury for the plaintiff.

---

**1.** 18 U.S.C. § 401. Power of court

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

The jury was instructed to report for the trial of the case on July 26, 1983. Upon receipt of the venire Warlick employed Charles Porter, a private investigator and a retired law enforcement officer, to conduct a jury investigation. Porter was instructed to directly contact and ask questions of members of the jury venire. The investigator was led by Warlick to believe that it was proper to make such contacts. Porter reported his progress to Warlick on several occasions prior to the time that the jury was selected in the *Herbert* case. Prior to the selection of the jury the investigator was in the office of two attorneys not connected with the appellant and the question of jury investigation was discussed. These attorneys advised Porter that contacting jurors was a violation of the Canons of Ethics and against the rules of the South Carolina Supreme Court and that if Porter had contacted any jurors he should immediately report this to the judge. Porter reported this to Warlick and also advised him of a recent decision [2] of the South Carolina Supreme Court prohibiting contact with family members of jurors. Warlick advised Porter to finish the investigation and to let Warlick handle the problem with the court.

After receiving the final report from his investigator, Warlick went to the United States District Court on July 11 and used the information to select his jury. Three or four jurors, who had been contacted, were selected on the *Herbert* jury. Warlick never divulged to the court or opposing counsel that he was using information which had been obtained by his investigator through direct contact with prospective jurors or their families. During the two weeks following the selection of the jury and prior to the trial of the case, Warlick continued to negotiate a settlement with opposing counsel and during this time participated in a pretrial conference with the judge and opposing counsel at which he rejected a $300,000.00 offer of settlement. The *Herbert* case was settled on the date it was set for trial.

The trial judge found that Warlick intended to directly contact jurors for the purpose of obtaining an advantage in the trial of his case and that Warlick's claim of ignorance of the law as to jury contacts was incredible because he had served in a judicial capacity for the town of Liberty, he had practiced law for eleven years, and he had been advised by other attorneys that direct jury contact was unlawful.

II

The power of a United States District Judge to convict and sentence a person for criminal contempt has been limited by 18 U.S.C. § 401(1), which in its original form was passed March 2, 1831 following the impeachment proceedings against a federal district judge, James H. Peck, who had imprisoned and disbarred a lawyer for publishing a criticism of one of the judge's opinions. The judge was acquitted on the impeachment charge but Congress immediately passed the Act to define the court's power to punish contempt.

In order for the conduct to be punishable under 18 U.S.C. § 401(1) four essential elements must be established beyond a reasonable doubt:

(1) Misbehavior of a person,

(2) which is in or near to the presence of the Court,

(3) which obstructs the administration of justice, and

(4) which is committed with the required degree of criminal intent.

Obstruction of the administration of justice is not to be confused with obstruction of justice. Justice may be obstructed by mere inaction, but obstruction of the administration of justice requires some-

---

**2.** *In the Matter of Two Anonymous Members of the South Carolina Bar,* 278 S.C. 477, 298 S.E.2d 450 (1982) which held that the S.C. Disciplinary Rule prohibiting communication with "members of a family of a venireman or a juror" included all persons residing in the same household and all persons related by blood or marriage to the prospective juror in the sixth degree.

thing more—some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process. In discussing a court's use of its power of contempt, the court in *Ex parte Hudgings,* 249 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656 (1919) stated:

> ... its great and only purpose is to secure judicial authority from obstruction in the performance of its duties to the end that means appropriate for the preservation and enforcement of the Constitution may be secured. *Toledo Newspaper Co. v. United States,* 247 U.S. 402 [38 S.Ct. 560, 62 L.Ed. 1186]; *Marshall v. Gordon,* 243 U.S. 521 [37 S.Ct. 448, 61 L.Ed. 881].

> An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted—.

■ Appellant's primary argument is that mere silence is not an obstruction of the administration of justice. Warlick contends that we should follow *United States v. Cantillon,* 309 F.Supp. 700 (C.D.Cal. 1970) which found that silence or failure to answer by an attorney could not constitute contempt unless it disrupted the court's judicial business. Warlick did more than simply conceal the fact that his investigator, acting upon his instructions, contacted various members of the jury venire. He used the information he had received from his investigator to select a jury in the presence of the court and with the hope of securing an advantage over the opposing party. He attended a pretrial conference with the court knowing that his case would be tried by the jury that had been improperly selected. The court's judicial business was disrupted when it learned of his activities.

■ Warlick argues that the business of the court was not disrupted, but this overlooks the time of the judge and court personnel required to investigate the matter once the jurors had reported contacts to the Marshal. He overlooks the voir dire conducted by the court of all jurors on the venire and of the attorneys with other cases for trial at the July term. The administration of justice was obstructed because the judge and other court personnel were required to make an immediate investigation into the possibility of jury tampering as to all of the cases for which juries were drawn on July 11, 1983. This investigation took time that would have been used to try cases that were pending and ready for trial.

■ Appellant relies upon *Nye v. United States,* 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941) in which the court established that the words of 18 U.S.C. § 401(1) "so near thereto," are to be considered as meaning geographically close to the court and also upon *United States v. Welch,* 154 F.2d 705 (3rd Cir.1946) where the court reversed a criminal contempt conviction arising from improper investigation and interviews with prospective jurors because it found that the nearest such act was at least fourteen miles from the courthouse. It found this could not be considered as in the presence of the court or "so near thereto as to obstruct the administration of justice." If Warlick had merely ordered the investigation and contact of prospective jurors, he might rely upon *Welch.* However, he brought this jury information into the presence of the court and used it to select a jury. This use of the ill gotten jury information in the court's presence resulted in a disruption of the administration of justice and is punishable as a criminal contempt.

■ In *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933) a juror was found guilty of criminal contempt in having falsely answered voir dire questions in order to qualify for jury service when she had predetermined to vote not guilty regardless of the evidence presented. The court found this to be contempt because it was designed to obstruct the processes of justice. In *Clark* the court compared a sworn juror with an attorney finding that

both were officers of the court. It stated: "[d]eceit by an attorney may be punished as a contempt if the deceit is an abuse of the functions of his office," citing *Bowles v. United States*, 50 F.2d 848, 851 (4th Cir.1931). 289 U.S. 12, 53 S.Ct. 468. In *Bowles*, the defendant appeared in the District Court of Maryland in a criminal case and deceived the court by representing that he was admitted to practice in the District Court for the District of Columbia, when in fact he had been disbarred from practice in that court. The actions of Warlick, committed in the presence of the court, in using jury information that was illegally obtained were "an abuse of the functions of his office" as an officer of the court. His willful concealment of the wrongful contacts with jurors and the families of jurors, and his use of this information in selecting a petit jury in the presence of the court was a deliberate endeavor to alter or impede the judicial process.

 The element of criminal intent is necessary to a contempt conviction and in *U.S. v. Marx*, 553 F.2d 874, 876 (4th Cir. 1977), we adopted the language of *U.S. v. Seale*, 461 F.2d 345, 368–69 (7th Cir.1972) which defined this intent as "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful ... [o]f course, an actual design to subvert the administration of justice is more grievous and·perhaps more culpable state of mind, but proof of such an evil motive is unnecessary to establish the required intent." The evidence amply supports the finding that Warlick was aware that contacts with jurors and families of jurors was wrongful and forbidden by Disciplinary Rule 7–108(A) and (F) of the Rules of Disciplinary Procedure governing members of the South Carolina Bar and that such contact had been proscribed by the Supreme Court of South Carolina. The record amply supports the finding of contempt under 18 U.S.C. § 401(1).

### III

Appellant excepts to the conviction of contempt under § 401(3), which requires "[d]isobedience or resistance to [a court's] lawful writ, process, order, rule, decree, or command." Warlick contends that "rule" as found in the statute applies only to a Rule to Show Cause or a similar order of the court and not to a standing rule or local rule of the district court defining attorney misconduct as "conduct tending to pollute or obstruct the administration of justice or to bring the courts or the legal profession into disrepute." There is a split of authority on this point and it is unnecessary for us to face it at this time because Warlick was convicted of contempt under both § 401(1) and (3) and the evidence and the law supporting a conviction under § 401(1) are overwhelming.

AFFIRMED.