United States Court of Appeals,

Fifth Circuit.

No. 91–1307.

AMERICAN AIRLINES, INC., Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, et al., Defendants,

v.

Neal D. MOLLEN, Donald Havermann, and Clay Humphries, Appellants.

Aug. 17, 1992.

Appeals from the United States District Court For the Northern District of Texas.

Before GOLDBERG, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Several attorneys for American Airlines appeal the rulings of the district court finding them in contempt of court, in violation of Rule 11 of the Federal Rules of Civil Procedure, and in violation of various state and local disciplinary rules. We reverse the criminal contempt convictions and otherwise affirm the district court's order.

I.

In December 1990, the Allied Pilots Association (the union) allegedly engaged in a "sick out" and other delay tactics which wreaked havoc on American's Christmas flight schedules. Attorneys Donald L. Havermann, Neal D. Mollen and Richard Malahowski[1] represented American Airlines, Inc. (American) as lead counsel in its litigation against the pilots' union. Attorney Clay Humphries was associated as local counsel shortly before American presented its motion for a temporary restraining order (TRO) to the court.

On December 26, 1990, American filed its complaint for injunctive relief and damages against

---

[1]Richard Malahowski does not appeal the judgment of the district court.

the union, a motion for TRO, a motion for preliminary injunction and memorandum in support. The pleadings were accompanied by and incorporated by reference seven written declarations. Two of those declarations—the Fowler and Siskin declarations—are central to this case. Fowler and Siskin had not signed their declarations. Apparently, the declarations were modified versions of earlier signed declarations. The declarants had orally approved the contents of the revised statements but were unavailable to sign them.

Havermann and Mollen knew that the declarations were not signed. They discussed with Humphries whether conformed copies would be accepted by the court. The signature pages of the declarations contained a line typed "executed" followed by a space. Attorney Mollen hand wrote the date "December 26" in the space provided. On the signature line he wrote the symbol "/s/" followed by the full names of Fowler and Siskin, respectively. Humphries was not aware that the originals had not been signed; he thought that they were just not in the possession of the attorneys. Humphries advised lead counsel that they could try to file the declarations in that form as long as the original signature pages were substituted as soon as possible. The Fowler and Siskin declarations were submitted to the court marked as described above.

Judge McBryde held an in chambers hearing on the TRO motion on December 26 at which all attorneys were present. The judge specifically stated that he was relying on the declarations in making his decision to grant the motion for the TRO. One or more of the attorneys urged that the evidence submitted with their motion was sufficient to support the issuance of the TRO. None of the attorneys informed the judge that neither Fowler nor Siskin had signed these declarations. The attorneys had live witnesses available at the time of the hearing who could testify in support of all or most of the facts contained in the Fowler and Siskin declarations. No witnesses were called. The judge issued the TRO.

On December 28, 1990, by telephone conference with the judge, the parties agreed to

postpone the hearing on the preliminary injunction which had been scheduled for January 3, 1991. During the telephone conference, the court told counsel that declarations could be used at the hearing so long as they were delivered to the court and opposing counsel by 2:00 p.m. the day before the hearing and the declarant was available for cross-examination (if requested by opposing counsel). Humphries, Havermann and Malahowski participated in the conference and again did not mention that Fowler and Siskin had never signed the declarations.

On January 9, 1991, American moved to substitute an original signature page for the Siskin declaration and to file a corrected declaration of declarant Fowler. At that time, the district court learned that the declarations had not been signed at the time they were submitted in support of the TRO motion. The union opposed the motion to substitute the declarations and filed a cross-motion to strike the declarations and vacate the injunction. The court struck the declarations. The court did not rule on the motion to vacate the TRO because the union withdrew its motion and the parties agreed to extend the TRO until the trial on the preliminary injunction.

On January 24, 1991, the court *sua sponte* entered an order setting the case for trial February 20 and stating further that the court would:

> ... take up the matter of possible contempt of court and sanctions, if any, to be imposed against plaintiff, American Airlines, Inc., or its counsel, or both of them, because of their conduct in falsely representing to the court and to counsel for defendants that the originals of the declarations of Jerry S. Fowler and Bernard R. Siskin filed with the court had been executed at the time they were presented to the court in support of plaintiff's motion for temporary restraining order and motion for preliminary injunction and in failing to disclose to the court and counsel for defendants that the declarations had not been signed by the respective declarants....
>
> plaintiff shall appear and show cause why (i) it or its counsel, or both of them, should not be held in contempt of court, and (ii) sanctions should not be imposed pursuant to Fed.R.Civ.P. 11 ...

A later notice issued February 13, 1991 added:

> In addition to other sanctions, the court will consider at the hearing denying the right of any

culpable attorney to participate in this action and in any other litigation pending now or in the future before this court.

A contempt hearing was held, at which the judge both presided and questioned the attorneys. The attorneys did not object to the proceedings. First, the judge recited the facts from his memory and as he had been able to reconstruct them from reviewing the files and talking to his staff. The attorneys were then invited to respond to his statement. Havermann, Mollen and Humphries all made statements, though none were formally placed under oath. Havermann and Mollen attempted to explain that they understood the symbol "/s/" to mean that the declarant had reviewed and approved the statement but had not yet signed it. The judge dismissed their explanation. At various points during each attorney's statement, the judge interrupted and asked questions regarding details of the facts, their intent or understanding regarding what had transpired.

At the conclusion of the hearing, the court recessed. Later the same day it announced its findings and conclusions and signed the contempt order. The court made a number of findings of fact and conclusions of law:

> * By their acts as described above, Havermann, Mollen and Humphries intended the court to believe that the Fowler and Siskin declarations had been signed by the declarants and that these signed originals were on file in the clerk's office.
>
> * Havermann and Mollen had acted willfully and in an attempt to deceive the court and had acted in contempt of court under 18 U.S.C. § 401.
>
> * Humphries and Malahowski had acted with negligence and gross negligence in their dealings with the court.
>
> * All attorneys as officers of the court had misbehaved in the presence of the court and in official transactions with the court for failure to disclose the status of the declarations. Havermann and Humphries were also cited on this ground for delivering the documents to the court.
>
> * Havermann and Malahowski violated Rule 11 of the Federal Rules of Civil Procedure by signing the motion for preliminary injunction and the memorandum in support thereof. Havermann was also cited for signing the motion for TRO.
>
> * All attorneys violated Rule 3.03 of the Texas Disciplinary Rules by making a false statement of material fact to the court and by offering and using evidence they knew to be false.
>
> * Havermann and Mollen violated Rules 3.04, 4.01 and 8.04 of the Texas Disciplinary Rules

by preparing and presenting the Fowler and Siskin declarations. These acts constituted falsifying evidence, knowingly making a false statement of material fact to a third party, and engaging in conduct that involved dishonesty, deceit and misrepresentation.

* All attorneys violated Local Rule 13.2 of the Northern District of Texas by engaging in unethical behavior.

The court imposed substantial fines on Havermann and Mollen for their contempt convictions, $3,000 each for each putative declaration. The court also fined Havermann a total of $6,000, ($2,000 for each signature placed on a pleading), as a sanction for violating Rule 11. The court struck all attorneys from the record in American's case against the union. It also barred the attorneys from appearing in the Northern District of Texas on any matter for various periods: Humphries for 30 days, Havermann and Mollen for six months. Humphries, Havermann and Mollen appeal.

## II.

The attorneys for American Airlines challenge the district court's ruling on several grounds. In general, they dispute the conclusions the court drew from their actions in the submission of the Fowler and Siskin declarations. Specifically, they argue that their actions did not constitute unethical behavior under either the Local Rule or the Texas Disciplinary Rules, that they did not violate Rule 11, and that they did not commit criminal contempt under 18 U.S.C. § 401. They also raise certain procedural problems with the contempt hearing and argue that the sanctions imposed were disproportionate to the challenged actions. We address first the court's findings from the evidence and its findings that the attorneys violated ethical rules and Rule 11. We will then address appellant's challenge to the criminal contempt conviction.

## A.

The various attorneys' roles in this transaction are not in question. Also, no one disputes the above description of the signature pages of the Fowler and Siskin declarations. The attorneys disagree strongly, however, with the conclusions the district court drew from these declarations and from their presentation to the court.

The district court looked at the signature pages of the Fowler and Siskin declarations and assumed that they were what they purported to be—conformed copies of a signed original. A handwritten date of execution was filled in the typewritten space provided. The names of the declarants were hand written on the signature line preceded by /s/—a symbol commonly used to designate on a copy that the original document is signed. The district court noted that it assumed that the Local Rules of the Northern District requiring that the signed original of all documents be filed with the clerk had been followed.[2] The district judge therefore assumed, at the time of the hearing on American's motion for TRO, that signed originals of the declarations were on file with the clerk's office.

Once Judge McBryde discovered that counsel had failed to have the declarations executed and failed to inform him of this fact, he justifiably concluded that the attorneys had willfully or negligently deceived the court. Havermann and Mollen knew that no signed originals existed and in the face of this knowledge, had nonetheless marked the signature pages of the declarations as conformed copies. Humphries, knowing that original signatures were not on file with the clerk, presented the conformed copies to the court. In their pleadings and arguments, counsel urged the court to rely on those declarations in granting the TRO. The signature pages of the declarations, along with the surrounding circumstances, amply support the district court's findings and conclusions. The district court was entitled to reject counsels' explanations that they were unaware that a handwritten signature preceded by a date and "/s/" symbolized a conformed copy of a signed instrument.

B.

It follows from our conclusion that the above factual findings of the district court are supported by the evidence that appellants' actions violated various disciplinary and ethical rules.

---

[2]Rule 2.1(c) requires that "[a]n original and one copy of each legal document, except discovery material ..., shall be filed with the Clerk."

First, all appellants violated Rule 3.03[3] of the Texas Disciplinary Rules. Counsel presented the declarations in a form that implicitly represented to the court that signed declarations were on file. This fact was not true. Counsel nevertheless urged the court to rely on these declarations. Counsel therefore made false statements of material fact to the court and offered and used evidence they knew to be false. Second, Havermann and Mollen violated Rule 3.04[4] of the Texas Disciplinary Rules by preparing the signatures on the declarations to make it appear that they had been signed. Third, this conduct by Havermann and Mollen also constituted the making of a false statement of material fact to the union and opposing counsel and conduct involving dishonesty, deceit and misrepresentation, in violation of Rules 4.01 and 8.04.[5] These violations of the Texas Disciplinary Rules easily qualify as unethical conduct which is barred by Local Rule 13.2[6] of the Northern District of Texas.

---

[3]Rule 3.03 of the Texas State Bar Rules governs "Candor Toward the Tribunal" and provides in pertinent part:

> (a) A lawyer shall not knowingly:
>
>> (1) make a false statement of material fact or law to a tribunal;
>>
>> (5) offer or use evidence the lawyer knows to be false.

> V.T.C.A., Government Code, Title 2, Subtitle G–Appendix. Article X, § 9. (West Supp.1992).

[4]Rule 3.04, "Fairness in Adjudicatory Proceedings," states "A lawyer shall not: (b) falsify evidence...." V.T.C.A., Government Code, Title 2, Subtitle G—Appendix. Article X, § 9. (West Supp.1992).

[5]Rule 4.01 "Truthfulness in Statements to Others" reads "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person...."

> Subsection (a)(3) of Rule 8.04 "Misconduct" bars an attorney from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation."

> V.T.C.A., Government Code, Title 2, Subtitle G—Appendix. Article X, § 9. (West Supp.1992).

[6]Rule 13.2 "Discipline of Attorneys" states:

> Any member of the bar of this Court who ... proves to be incompetent to practice before this Court because of unethical behavior ... is subject to revocation of admission to practice in this District and to other appropriate discipline, after such hearing as the Court may direct in each particular instance.

Havermann and Mollen also argue that the Texas Disciplinary Rules do not provide a basis for sanctions by the district court. Sometime before 1987 the Northern District of Texas adopted the Texas Code of Professional Responsibility, as the standard governing the conduct of attorneys in that court. In 1987, the Northern District of Texas repealed this rule and ordered that "[m]atters concerning the discipline of attorneys practicing before this Court shall henceforth be governed by Local Rule 13.2...." Order Repealing Miscellaneous Order No. 24, March 24, 1987; Miscellaneous Order No. 24, December 7, 1978, Rule IV(B). Appellants argue that this order makes irrelevant the Texas Disciplinary Rules. This history does not convince us that the district court may not refer to the Texas Disciplinary Rules in part to define behavior for purposes of its own rule. In any event, counsels' behavior is unethical under any standard the district court may have chosen to judge it by.

C.

Havermann also challenges the district court's conclusion that he violated Rule 11 of the Federal Rules of Civil Procedure. Under Rule 11, an attorney's signature on a pleading certifies that the attorney believes, after reasonable inquiry, that the pleading "is well grounded in fact and is warranted by existing law ... and that it is not interposed for any improper purpose...." Fed.R.Civ.P. 11. The Committee Note to the Rule states that the standard of behavior for the signing attorney is that of "reasonableness under the circumstances". Further, it is an objective test, not resting on what the signing attorney believed was reasonable. *Hale v. Harney,* 786 F.2d 688, 692 (5th Cir.1986). We review all aspects of the district court's decision to invoke Rule 11 and accompanying sanctions under the abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

There are three ways a pleading, motion or other paper may offend the Rule: inadequate legal support, inadequate factual support and improper purpose. 2A James A. Moore et al., Moore's Federal Practice and Procedure ¶ 11.02[3], at 11–12 (2d ed. 1991). The district court found that Havermann had violated Rule 11 on two grounds.

> The signing by Mr. Havermann of the motion for temporary restraining order, the motion for preliminary injunction and the memorandum in support of such motion violated Rule 11, Federal Rules of Civil Procedure. The contents of such documents impliedly represented to the court that the putative declarations of Fowler and Siskin were properly signed and constituted evidence upon which the court could rely in determining whether to grant a temporary restraining order and a preliminary injunction. The representations impliedly made by the documents were not well-grounded in fact and were made for the improper purpose of inducing the court to grant a temporary restraining order and preliminary injunction on the basis of the unsigned declarations, which had no evidentiary effect.

Havermann counters that Rule 11 was not designed to deal with technical aspects of the form of pleadings (or attached declarations) and that the pleadings were well-grounded in fact even if no declarations were submitted.

Havermann misses the thrust of the district court's conclusion. The court did not challenge the evidentiary basis for the motion for preliminary injunction as such. It challenged the propriety of counsels' motion and supporting memorandum that cited and relied on the Fowler and Siskin declarations as support for the requested TRO. The motions signed by Havermann sought relief based at least in part on evidence that was not what it purported to be. The Siskin/Fowler statements were unsigned. As the district court found, these references and implied representations were not well grounded in fact because Havermann knew that the declarations were not signed. Every statement in a motion or memorandum need not be frivolous to support a finding of a Rule 11 violation. Counsel may violate the rule by including some frivolous or unsupported information. 2A James W. Moore et al., Moore's Federal Practice and Procedure ¶ 11.02[3], (1991–92 Supp. at 134). The district court did not abuse its discretion in concluding that Havermann's signature on these documents was a violation of Rule 11.[7]

Havermann also challenges the Rule 11 sanction on the grounds that the district court's notice did not satisfy the requirements of due process. The first notice issued by the court clearly stated that the court would consider whether "sanctions should not be imposed pursuant to Fed.R.Civ.P. 11".

---

[7]We need not discuss the district court's finding that the representations were made for an improper purpose since the finding we uphold is an adequate basis on which to affirm the finding that Havermann violated Rule 11.

Havermann argues however, that the notice was deficient because it did not disclose the court's "novel theory of the supposed Rule 11 violation."

The procedure followed by the court in imposing sanctions under Rule 11 must obviously comply with the requirement of due process. This requires in general adequate notice and an opportunity to be heard. This circuit requires that the level of formality of the notice and proceedings must correspond to the level of sanctions imposed. *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 883 (5th Cir.1988). The level of notice provided and the hearing held was adequate to meet this standard even given the severity of the sanction imposed. The notice issued by the district court sufficiently described the nature of Havermann's conduct that the court wanted to address. It also specifically cited Rule 11 as a basis for possible sanctions. The procedure was adequate.

III.

Finally, Havermann, and Mollen challenge their convictions of criminal contempt under 18 U.S.C. § 401 on procedural and substantive grounds.[8] They argue first that the notice of the hearing was inadequate to warn them that criminal contempt was being considered. In addition, they contend that the proceeding itself was improper because the judge served as both prosecutor and fact finder. On substantive grounds they argue that they did not violate § 401(1) of the criminal contempt statute and that other provisions of that statute are inapplicable to the facts of this case.

As an initial matter, we disagree with appellants that the notice received in this case was inadequate. Federal Rule of Criminal Procedure 42(b) provides that non-summary criminal contempt shall be prosecuted on notice. "The notice shall state the time and place of hearing, allowing a

---

[8]Humphries also raises this challenge although he was not formally found in contempt. He argues that the district court's factual findings, which include him, trace the language of 18 U.S.C. § 401 and therefore have the same effect as a specific finding that he committed criminal contempt. Given our disposition of the charges, we need not address the merits of Humphries' argument. To the extent that he is correct, the following conclusions regarding the formal convictions of Havermann and Mollen of criminal contempt apply equally to any taint of a possible conviction on Humphries.

reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such."  Havermann and Mollen's main complaint about the notice is that it did not state specifically that the hearing was on a *criminal* contempt charge.

Although there are cases that appear to hold that the failure to use the word "criminal" in the contempt notice is fatal, a close reading of those cases shows that the notice requirement is less stringent.  For example, in *Lamar Financial Corp. v. Adams,* 918 F.2d 564, 567 (5th Cir.1990), the district court issued notice to show cause why the parties should not be held in contempt for failure to comply with an order compelling production.  This notice did not indicate that the contempt charge was criminal rather than civil.  However, the behavior the court identified as the source of the complaint was the type that could be punished with coercive, i.e. civil, sanctions.  Such a notice was therefore held inadequate for a criminal contempt proceeding.

But the omission of the word "criminal" in the contempt notice is not always fatal.  *Hopkins v. Jarvis,* 648 F.2d 981, 985 (5th Cir. Unit B 1981).  It may be fatal if the notice fails to describe the conduct which forms the basis for the contempt charge or if the conduct could be the basis for civil coercive contempt proceedings.  *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947);  *Federal Trade Commission v. Gladstone,* 450 F.2d 913, 916 (5th Cir.1971).  In this case the notice clearly described the offending conduct—the submission of unsigned declarations.  Past conduct such as this is not subject to coercive civil sanctions.  Thus, the appellants had no reason for confusion or reason to believe they were facing other than criminal contempt charges.  The notice was adequate.

The conviction must be reversed however for another procedural defect.  Judge McBryde *sua sponte* initiated the contempt proceeding, questioned the witnesses and otherwise acted as prosecutor, and then decided all factual and legal issues.  In a Rule 42(b) criminal contempt proceeding, the judge may "not prosecute the contempt and at the same time act as Judge."  *In re*

*Davidson,* 908 F.2d 1249, 1251 (5th Cir.1990). To do so deprives the defendant in a criminal contempt proceeding of an impartial decision-maker. The judge in this case erred in assuming these dual roles. We therefore reverse these convictions for this reason.

Because of double jeopardy implications we also consider whether the evidence supports the conviction. *See United States v. Miller,* 952 F.2d 866, 871 (5th Cir.1992). The governing statute provides:

> A court of the United States shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2) Misbehavior of any of its officers in their official transactions;
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. The factual findings of the district court track the language of parts (1) and (2) of § 401, reflecting the court's reliance on those subsections of the statute as the authority for the conviction.

Any reliance on § 401(2) was misplaced. The term "court officers" in that provision does not apply to counsel appearing before the court. *Cammer v. United States,* 350 U.S. 399, 405, 76 S.Ct. 456, 459, 100 L.Ed. 474 (1956). The language refers to court clerks and other "conventional court officers." *Id. See also In re Rumaker,* 646 F.2d 870, 872 & n. 2 (5th Cir.1980).

That leaves § 401(1). Four elements must be proven beyond a reasonable doubt to show a violation of Section 401(1): (1) misbehavior, (2) in or near the presence of the court, (3) with criminal intent, (4) that resulted in an obstruction of the administration of justice. *Vaughn v. City of Flint,* 752 F.2d 1160, 1167 (6th Cir.1985); *United States v. Warlick,* 742 F.2d 113, 115 (4th Cir.1984); *United States v. Seale,* 461 F.2d 345, 366–67 (7th Cir.1972). Havermann and Mollen

dispute that the evidence establishes any of these elements.

As our previous discussion reflects, the record amply supports an inference that the attorneys misbehaved when they submitted the declarations marked as conformed copies when they knew the declarants had not signed them. We therefore find evidentiary support for the first element.

Havermann and Mollen also argue that the preparation and filing of the declarations did not take place "in or near the presence of the court." It is true that the mere filing of pleadings or other documents does not satisfy this requirement. *United States v. Lee,* 720 F.2d 1049, 1052 (9th Cir.1983); *In re Jafree,* 741 F.2d 133, 136 (7th Cir.1984). However, the attorneys did more than file the falsely marked declarations. They used this evidence to support their motion for TRO in a hearing before the court. *See Warlick,* 742 F.2d at 117. At the hearing in the judge's chambers on American's motion for TRO, the judge specifically said that he was relying on the declarations in making his decision to issue the TRO. In addition, the court found that one of the attorneys at the hearing (which could have been Havermann or Mollen) expressed agreement with the court's statement that the declarations provided sufficient evidence. Neither Havermann nor Mollen responded to the court's statement to inform the court that the Fowler and Siskin declarations were not signed. These acts and omissions clearly took place in the presence of the court and satisfy the second element.

Finally, appellants assert lack of evidentiary support for the last two elements: that the acts of the accused were done with the intent to obstruct the administration of justice and in fact had that effect. Obstruction requires an "act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." *Warlick,* 742 F.2d at 116. The obstruction can be shown by establishing that the defendant's acts delayed the proceedings, made more work for the judge, induced error or imposed unnecessary costs on the other parties. *United States v. Oberhellmann,* 946 F.2d 50, 52 (7th Cir.1991). Actual obstruction of the administration of justice requires at a minimum that

the defendant's conduct had an effect on the proceedings, which presupposes a cause triggered by the attorney's acts. *Id.* at 53.

In this case, we find no evidence that appellant's conduct resulted in delay or additional work for the judge. The time consumed by the contempt investigation itself is not considered in this analysis. *Id.* at 53. Thus the question narrows to whether the attorneys' acts induced error; that is whether the Fowler/Siskin declarations led the court to erroneously issue the TRO. We find insufficient evidence in the record to answer this question in the affirmative.

When American moved to substitute the original signature pages of the Fowler/Siskin declarations, the court learned that the declarations he had relied on were not signed when submitted. The union opposed the motion to substitute, and filed a cross-motion to strike the declarations and vacate the TRO. During the contempt hearing, the court, as part of its recitation of the background facts, indicated that it would have granted the union's motion and vacated the TRO had a settlement not been reached. Judge McBryde did not state the reasons for his preliminary decision. Specifically he did not say whether the decision was based on the state of the evidence without the Fowler and Siskin declarations or his reaction to the deception by American's attorneys. This decision was not announced because American and the union mutually agreed to extend the TRO and the union withdrew their motion to vacate. In fact, American never filed a response to the union's motions. Although this disclosure by the judge indicates that he thought the Fowler and Siskin declarations critical to his decision to issue the TRO, the formal findings of fact and conclusions of law issued by the judge contain no fact finding on this element. Thus the judge's unannounced and (by his own characterization) tentative decision to vacate the TRO is not enough to prove beyond a reasonable doubt that the TRO would not have issued in the absence of the Fowler and Siskin declarations.

Other facts in the record support the appellants' argument that the court would have issued the TRO even if the declarations had not been filed. At the contempt hearing the American attorneys

stated that they came to the hearing on the motion for TRO prepared to present l ive witnesses to establish all the facts in the declarations, including the Fowler and Siskin declarations. One of the available witnesses was Captain Hof, Fowler's supervisor. Also, much of the information and several exhibits from the Fowler declaration were also reported in the declaration of Philip A. Smythe, American's Managing Director of Employee Relations. Both declarations described and explained materials and notices regarding the pilots' slowdown activities.

Mark J. Tedone, American's statistical analyst, was prepared to testify about the statistical evidence that was documented in his and Siskin's declarations. Much of the information presented in Siskin's declaration was also presented in Tedone's. Tedone stated that the increased level of flight delays experienced by American during 1990 was due to deliberate and concerted pilot action. Given the level of duplicate information contained in the valid declarations submitted, the live testimony American was prepared to offer at the TRO hearing, and the absence of a fact finding on this point, the record evidence does not support an inference that the court would have declined to issue the TRO had the Fowler and Siskin declarations not been filed. The evidence does not support an inference that the acts of the attorneys obstructed the administration of justice.

Thus, the convictions of Havermann and Mollen of criminal contempt fails for procedural and substantive reasons. We need not reach the issue of intent.

IV.

Havermann and Mollen argue finally that the sanctions imposed were grossly disproportionate to the gravity of their conduct. Havermann and Mollen were fined $6,000 each for their contempt convictions. Havermann was also fined $6,000 for violating Rule 11. Both attorneys were stricken from the record in American's case against the union and barred from appearing in the Northern District of Texas on any matter for six months. We understand the court to have imposed this sanction for violating the court's local rule.

The six-month suspension period has run. The criminal contempt convictions and accompanying fines must be reversed for procedural and substantive reasons. Thus, we are faced only with the appropriateness of the district court's order imposing $6,000 in fines against Havermann under Rule 11 and striking Haverman and Mollen as attorneys of record in this case under the court's local rule.

We review both sanctions under the abuse of discretion standard. Under Rule 11 the district court has broad discretion to impose sanctions that are reasonably tailored to further the objectives of Rule 11. *Thomas,* 836 F.2d at 876–78. Proper objectives of Rule 11 sanctions are to deter, to punish and to compensate opposing parties. *Id.* at 879. The court should use the least severe sanction that is adequate to fulfill this purpose. *Traina v. United States,* 911 F.2d 1155, 1158 (5th Cir.1990). The court's discretion is at least this broad in determining whether an attorney should be disciplined by suspending his right to practice before it. *D.H. Overmyer Co., Inc. v. Robson,* 750 F.2d 31, 33–34 (6th Cir.1984).

The district court made detailed findings outlining the attorney's offending conduct it sought to punish and deter others from engaging in. As we stated previously, these findings are supported by the record. Given the gravity of Havermann and Mollen's misconduct, the district court did not abuse its discretion by fining Havermann $6,000 under Rule 11 or by striking Havermann and Mollen as attorneys of record in this case for violating the court's local rules. *See Bogney v. Jones,* 904 F.2d 272 (5th Cir.1990).

V.

In summary, we affirm the district court's judgment in all respects except its conviction of appellants Havermann and Mollen for criminal contempt. We reverse those convictions.

AFFIRMED in part, REVERSED in part.

. . . . .