UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-30895

_____

UNITED STATES OF AMERICA,

                                    Plaintiff

UNITED STATES DEPARTMENT OF JUSTICE,

                                    Appellee

        v.

RENE ORTLIEB, III,

                                    Defendant

MICHAEL S. FAWER,

                                    Appellant

_____

Appeal from the United States District Court
for the Middle District of Louisiana

_____

November 27, 2001

Before KING, Chief Judge, BARKSDALE, Circuit Judge, and SCHELL,
District Judge.[*]

SCHELL, District Judge:

        Appellant Michael S. Fawer appeals his conviction and

sentence after having been found guilty on each of three charges,

or specifications, of criminal contempt in violation of Title 18

_____

        [*] District Judge of the Eastern District of Texas, sitting
by designation.

U.S.C. § 401(1). Fawer contends that the evidence was insufficient to support each specification of contempt, that the district judge erred in not recusing himself from hearing Specification No. 5, and that the sentence he received, consisting of both a fine and suspension from the practice of law in the Middle District of Louisiana for one year, was not authorized under the law. For the following reasons, we AFFIRM in part and VACATE in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Michael S. Fawer was convicted on three specifications of criminal contempt by the United States District Court for the Middle District of Louisiana. Fawer was found in contempt based upon his comments and conduct as defense counsel in a criminal trial styled *United States v. Rene Ortlieb, III and John Schulze,* No. 99-31-C-M3. During the six week trial, Fawer repeatedly made vulgar and inappropriate comments to Assistant United States Attorney Michael Reese Davis (Davis) and the court. In total, Fawer was charged with five specifications of contempt.

On January 3, 2000, the district judge issued an "Order to Michael S. Fawer, Esq. to Show Cause Why He Should Not Be Held in Contempt of Court." The order cited five specifications and informed Fawer that the court was proceeding under Federal Rule of Criminal Procedure 42(b). In response to the order, Fawer

2

filed several motions including a motion to recuse the district judge from presiding over the contempt hearing. The district judge granted in part Fawer's motion and recused himself from presiding over Specifications No. 2 and No. 4, but determined that he should not recuse himself from hearing Specifications No. 1, No. 3, and No. 5. Thereafter, the court proceeded to a hearing on those specifications. Fawer was found guilty on all three specifications.

The court held a sentencing hearing on July 19, 2000. Prior to imposing a sentence, the court entertained motions filed by the parties. The court denied Fawer's motion for new trial and granted the government's motion to strike the affidavits attached to Fawer's motion for new trial. The district court then sentenced Fawer as follows:

```
Specification No. 1:    $1,500 fine;
Specification No. 3:    $500 fine;
Specification No. 5:    $3,000 fine; and
suspension from the practice of law in the Middle District
of Louisiana for a period of one year.[1]
```

Immediately following the imposition of sentence, Fawer filed a motion to stay the execution of sentence which was denied by the district court. On July 24, 2000, Fawer filed a timely notice of appeal to this court. The next day, Fawer moved this

---

[1]From a reading of the sentencing hearing transcript, the court appears to have ordered the suspension based on a totality of Fawer's conduct and not on any one specification. Additionally, Fawer's readmission to the Middle District of Louisiana was contingent on his completion of three hours of training in professionalism.

3

court for a stay of the execution of his sentence.  On July 28, 2000, a panel of this court granted Fawer's motion for stay, but only with regard to the suspension.

**II. SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE CONVICTION**

In reviewing  the sufficiency of the evidence, the court must consider the evidence in the light most favorable to the government.  *See United States v. Time*, 21 F.3d 635, 640 (5th Cir. 1994).

Fawer was convicted under Title 18 U.S.C. § 401(1)[2] on three specifications of criminal contempt and asserts that his convictions under all three specifications should be reversed because insufficient evidence exists to support those convictions.  Criminal contempt under § 401(1) has four elements that must be proven beyond a reasonable doubt:  (1) misbehavior, (2) in or near the presence of the court, (3) with criminal intent, (4) that resulted in an obstruction of the administration of justice.[3]  *See American Airlines, Inc. v. Allied Pilots Ass'n*,

---

[2]18 U.S.C. § 401(1) provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as-

(1)  Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

[3]Fawer concedes in his brief that his conduct was misbehavior and in the presence of the court.

4

968 F.2d 523, 531 (5th Cir. 1992). Fawer argues that the government failed to prove that his comments were made with the intent to obstruct justice, or that the evidence was not sufficient to support such a finding. The government responds that the evidence was sufficient and that the district court made the appropriate finding on the issue of intent.[4]

The district judge found Fawer guilty of contempt on the following three specifications:

**Specification No. 1:** The court found Fawer in criminal contempt under this specification for telling opposing counsel Davis to "Go kiss my ass. Okay?" Fawer made this statement after Davis made the comment to Fawer "A littler louder. He is not quite hearing you, Mike."[5] Davis made this comment sarcastically referring to the high volume in which Fawer spoke. This conversation occurred at a bench conference in front of the

---

[4]The contempt at issue in this case could have been dealt with summarily under Rule 42(a) which provides for summary disposition of criminal contempt committed in the presence of the judge. However, the district judge postponed disposition of the contempt charges until the trial was complete and informed Fawer in the show cause order that the court was proceeding under Rule 42(b). Since Fawer's contumacious conduct was committed in open court and on the record, any evidence supporting the conviction should be present in the trial transcript. Additionally, the district judge observed and discussed Fawer's conduct with him at the time that it occurred. Therefore, additional evidence was not required at the show cause hearing. To resolve the sufficiency of the evidence issue in this case, this court can look to the trial transcript to determine if the evidence supports the judge's determination.

[5]Apparently, Davis was referring to the witness overhearing Fawer's arguments at the bench.

judge. The judge requested that Fawer apologize to the court and to Davis. Fawer did apologize to the court, but refused to apologize to Davis even after the judge insisted that he do so. Eventually, the judge had to retire the jury to address the situation. After repeated attempts to get Fawer to apologize outside the presence of the jury, the judge warned Fawer that he would be held in contempt to which Fawer replied "That is fine" and proceeded to defend his position that he would not apologize.

**Specification No. 3:** The conduct involved in this specification also occurred at a bench conference. During a discussion concerning an objection raised during Fawer's cross-examination of a witness, Fawer stated "Judge, I don't want to deal with this idiot," in reference to Davis. The judge called on Fawer to apologize for this comment to which Fawer responded "No way." During the discussion of this comment, Fawer stated "I don't care" in response to the judge's saying to Fawer "You've gone again." No recess was taken, and the jury was not retired due to this conduct.

**Specification No. 5:** As with the other two specifications, this conduct also occurred at a bench conference. During Davis's final argument, Fawer raised an objection which the judge determined should be resolved at the bench. At the bench conference, the judge overruled Fawer's objection to which Fawer

6

responded "Ah, shit."[6]  A discussion followed in which Fawer said

when questioned about the comment, "I was angry at you because-."

He followed this statement by saying that he was not directing

the "Ah, shit" comment to the judge, but that the ruling was

improper and that the judge knew it was improper.  As with

Specification No. 3, there was no formal recess in the

proceedings, and the jury was not retired.

Fawer's primary argument on appeal is that the evidence is

not sufficient to find that he had the requisite intent required

under § 401(1).  Fawer argues that the district court was

required to find that he intended to obstruct justice by his

actions and that the evidence does not support such a finding.

The government responds that all that is required for intent

under § 401(1) is "a volitional act done by one who knows or

should reasonably be aware that his conduct is wrongful."  *United

States v. Warlick*, 742 F.2d 113, 117 (4th Cir. 1984) (quoting

*United States v. Seale*, 461 F.2d 345, 368-69 (7th Cir. 1972)).

The government's position is that the intent element does not

require an intent to obstruct justice, but rather, only the

intent to engage in the conduct which resulted in the obstruction

of justice.

---

[6]Fawer contends that this comment was said under his breath
and not intended to be heard by the court.

7

Fawer finds support for his position in opinions from this circuit and the Seventh Circuit. In *American Airlines, Inc.,* 968 F.2d at 532, this court stated that the district court must determine whether "the acts of the accused were done with the intent to obstruct the administration of justice and in fact had that effect." However, the court addressed the obstruction issue prior to the intent issue, and finding no obstruction, did not reach the issue of intent. *See id.* at 532-33. In *United States v. Griffin*, 84 F.3d 820 (7th Cir. 1996), the Seventh Circuit, in interpreting its prior decision in *Seale*, stated in dicta that § 401(1) "requires specific intent to obstruct justice." *Id.* at 832 n.9. The court went on to say that "[w]hether that vestige of 1970s jurisprudence is sound awaits another case." *Id.* In making this statement, the Seventh Circuit appeared to question the validity of its prior decision. Regardless, the *Griffin* court determined, under the facts of the case before it, that the district judge's finding that the defendant intended to prejudice a fair and impartial hearing was synonymous with a finding that the defendant intended to obstruct the administration of justice. *Id.*

The position espoused by the government finds support from *United States v. Warlick*, 742 F.2d 113, 117 (4th Cir. 1984). Ironically, the court in *Warlick* relied upon the same case as the court in *Griffin* when stating its position on the intent element.

8

In both cases, the courts relied upon the definition of "intent" in *United States v. Seale*, 461 F.2d 345 (7th Cir. 1972). Quoting *Seale,* the *Warlick* court defined intent under § 401(1) as

> a volitional act done by one who knows or
> should reasonably be aware that his conduct is
> wrongful . . . . Of course, an actual design
> to subvert the administration of justice is a
> more grievous and perhaps more culpable state of
> mind, but proof of such an evil motive is unnecessary
> to establish the required intent.

*Warlick,* 742 F.2d at 117. In *Griffin*, the Seventh Circuit interpreted this quote from its earlier *Seale* case to require specific intent to obstruct justice. However, the Fourth Circuit in *Warlick* did not view the intent element or this quote from *Seale* as requiring the actual intent to obstruct justice. Under the standard outlined above, the *Warlick* court concluded that ample evidence existed to find that the defendant (an attorney) was aware that his conduct was wrongful. The *Warlick* court did not look at the intent element as requiring proof of "intent to obstruct," but rather as only requiring some conduct that defendant knew was wrongful.

The Seventh Circuit in a companion case to *Seale* applied *Seale* in the context of attorney misconduct and stated that "an attorney possesses the requisite intent only if he knows or reasonably should be aware in view of all the circumstances, especially the heat of controversy, that he is exceeding the outermost limits of his proper role and hindering rather than

9

facilitating the search for the truth." *In Re Dellinger*, 461 F.2d 389, 400 (7th Cir. 1972)(discussing *Seale*, 461 F.2d at 368-69). Although there is no mention of "intent to obstruct" in *Dellinger*, the quoted language does require proof that the attorney knows or reasonably should be aware that he is hindering the search for the truth and thereby obstructing the administration of justice.

After examining the cases cited above, and consistent with this court's opinion in the *American Airlines* case, we conclude that the element of intent under 18 U.S.C. § 401(1) requires proof beyond a reasonable doubt that the accused attorney engaged in conduct that he knew would interrupt or obstruct the orderly process of the administration of justice.

The most obvious source from which intent can be ascertained is the trial transcript. *See Seale*, 461 F.2d at 369. In reviewing the trial transcript, the court finds that sufficient evidence is present in the record to support the district court's finding on intent under the standard outlined above.

Of course, even if Fawer had the intent required under § 401(1), the contumacious conduct must also actually obstruct the administration of justice. In making this determination, the court is again guided by its decision in *American Airlines.* There, this court determined that "[o]bstruction requires an 'act that will interrupt the orderly process of the administration of

justice, or thwart the judicial process.'" 968 F.2d at 532 (quoting *Warlick*, 742 F.2d at 115). "[O]bstruction can be shown by establishing that the defendant's acts delayed the proceedings, made more work for the judge, induced error or imposed unnecessary costs on the other parties." *Id.* (citing *United States v. Oberhellmann*, 946 F.2d 50, 52 (7th Cir. 1991)). "Actual obstruction of the administration of justice requires at a minimum that the defendant's conduct had an effect on the proceedings, which presupposes a cause triggered by the attorney's acts." *Id*. However, the time consumed by the contempt investigation itself is not considered in this analysis.

As outlined above, in Specification No. 1, the judge had to retire the jury to address Fawer's conduct. In Specification No. 3, although retiring the jury was not necessary, Fawer's actions caused the judge to take more time at the bench conference to address Fawer's comments and try to convince him to apologize. In Specification No. 5, the judge did not retire the jury, but dealt with Fawer as he did in Specification No. 3.

It is clear that the conduct in Specification No. 1 had an effect on the proceedings and did in fact delay the proceedings. Because of Fawer's use of profanity during the bench conference, the judge was forced to retire the jury to admonish Fawer and instruct him to apologize to opposing counsel. This action by the district judge certainly rises to the level of interrupting

11

the orderly process of the administration of justice, delaying the proceedings, and making more work for the judge. *See Griffin*, 84 F.3d at 833 (holding that a delay caused by the trial judge having to retire the jury to admonish the defendant was actual obstruction). Accordingly, the district court did not err in finding Fawer guilty on Specification No. 1.

Fawer's conduct outlined in Specifications No. 3 and No. 5 caused similar action by the judge. In both instances, the court had to take additional time to deal with Fawer's rude and vulgar comments. Although the district judge did not retire the jury, Fawer's unruly conduct disrupted the trial and required the judge to divert his attention from the trial and focus on Fawer's improper behavior. Additionally, "if an entirely unnecessary and not insignificant delay is occasioned by insulting remarks which serve, for instance, only to vent the speaker's spleen, a material obstruction would exist." *Dellinger*, 461 F.2d at 400. Clearly, Fawer's remarks served only to vent his frustrations and were not designed to further his client's interests. Fawer's misbehavior caused delay in the proceedings, made more unnecessary work for the judge, and served no purpose in defending his client. Accordingly, this court is of the opinion that the conduct in Specifications No. 3 and No. 5 also rises to the level required for the district court to have determined that Fawer's conduct resulted in the actual obstruction of the

administration of justice.  Therefore, the district court did not err in so finding.

### III. DISQUALIFICATION UNDER FEDERAL RULE OF CRIMINAL PROCEDURE  42(b)

Fawer contends that the district judge should have recused himself under Federal Rule of Criminal Procedure 42(b) from hearing Specification No. 5.  Under Rule 42(b), "[i]f the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent."  Obviously, Fawer did not consent as evidenced by his motion to recuse.  This court reviews a district judge's decision not to disqualify himself from presiding at a Rule 42(b) proceeding for an abuse of discretion. *United States v. Griffin,* 84 F.3d 820, 830 (7th Cir. 1996).

Fawer argues on appeal that the district judge should have recused himself from hearing Specification No. 5, but not Specifications No. 1 and No. 3.  As discussed previously, Specification No. 5 involved Fawer's reaction to a ruling by the district judge.  Reviewing the record concerning Specification No. 5, it is clear that Fawer was upset about the judge's ruling and vented his frustrations with his inappropriate comment.[7]

---

[7]The following exchange gave rise to Specification No. 5:

```
THE COURT:     I'm overruling your objection.
MR. FAWER:     You're going to let him testify?
THE COURT:     Overruled.
MR. FAWER:     Ah, shit.
```

13

The arguments on this issue focus on whether Fawer's comment was a criticism of the court's ruling or a criticism of the judge.  Fawer contends that his comment was a "vulgar, profane remark expressing Fawer's belief, and frustration, that the district judge was so biased in favor of the government that he would not rule in his client's favor even when it was unquestionably appropriate to do so."[8]  The government's position is that the district judge did not view the comment as "disrespectful or critical of the court," but as critical of the court's ruling.

The parties refer to language from *Ungar v. Sarafite*, 376 U.S. 575 (1964).  The *Ungar* Court was presented with an argument

---

```
THE COURT:        Excuse me?
REPORTER'S NOTE:      (Attorney leaves the bench)
THE COURT:        Come back, Mr. Fawer.
MR. FAWER:        How can you let somebody testify - -
THE COURT:        What was the rest of that?
MR. FAWER:        I was angry at you because - -
THE COURT:        What did you say?
MR. FAWER:        I said, ah, shit.  That's what I said, not to
                  you.  So you understand, Judge - -
THE COURT:        I heard it, Mr. Fawer. We'll talk about that
                  later.
MR. FAWER:        You know and I know that that's an improper
                  ruling.
```

[8]Although Fawer now argues that he directed his comments at the judge personally, his original briefing on this issue does not reflect such a position.  In his brief, he quotes from an affidavit (which had been stricken by the judge) that was attached to his motion for new trial.  The affidavit was that of Hugh Chester Boyd (co-counsel for the defendant in the underlying criminal trial), who stated in reference to the "Ah. Shit" comment,  "I do not believe that was directed at or towards the court."  [Appellant's brief at 17]

14

that a witness's constitutional right to a fair hearing was violated because his contemptuous remarks were a personal attack on the judge which necessarily biased the judge. *Id.* at 583. The Court determined that the witness was attacking the judge's ruling, and the court was "unwilling to bottom a constitutional rule of disqualification solely upon such disobedience to court orders and criticism of its rulings during the course of a trial." *Id.* at 584. The Court determined that although the defendant's conduct was a "disruptive, recalcitrant and disagreeable commentary" it was "hardly an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification." *Id.* In view of the record, it is clear that Fawer was frustrated by the district court's ruling on his objection and vented those frustrations through the use of profanity.

In addition to looking at the trial transcript, the show cause order is also helpful in demonstrating how the judge viewed Fawer's comments in Specification No. 5. The show cause order outlines the contempt specifications and states whether the court believed the statements were disrespectful to the court, opposing counsel, or the court's rulings. The order with respect to Specifications No. 1 and No. 3, states that the comments were directed to opposing counsel. The order with respect to Specifications No. 2 and No. 4 states that Fawer was

15

disrespectful to the court.  As the judge clearly believed that Fawer's conduct in Specifications No. 2 and No. 4 was disrespectful or critical of him, he recused himself on those two specifications.  With regard to Specification No. 5, the show cause order shows that the judge felt that Fawer's comment was directed to "the Court's ruling" and not to the judge.  Unlike Specifications No. 2 and No. 4, the judge clearly felt as though the comment in Specification No. 5 was directed at his ruling and not at him personally.  This distinction is particularly clear in this case since the judge found that two of the other specifications involved disrespect to him, but he did not view Specification No. 5 similarly.

Although Fawer now argues that he was disrespectful to or critical of the judge, the transcript and the show cause order indicate that his comment was a response to the court's ruling and that the judge did not receive his comment as a personal attack.  Accordingly, in view of the record concerning Specification No. 5 and the district judge's perception of the conduct therein, this court finds that the district judge did not err in not recusing himself from hearing Specification No. 5.

## IV.   THE LEGALITY OF THE SENTENCE

The legality of a criminal sentence is reviewed *de novo*. *See United States v. Byrd,* 116 F.3d 770, 773 (5th Cir. 1997).

16

Fawer argues that it was error for the district court in sentencing him to both impose a fine and suspend him from the practice of law in the Middle District of Louisiana for one year.

Fawer makes the following arguments: (1) that neither Federal Rule of Criminal Procedure 42(b), nor 18 U.S.C. § 401 provides for a punishment of suspension from the practice of law; (2) that § 401 allows for either a fine or imprisonment, but not both; and (3) that he was not given notice that he was being charged with ethical violations that could result in his suspension from the practice of law. The government responds that the district court had the power to sentence Fawer to a term of probation and a fine pursuant to 18 U.S.C. § 3551 of the Sentencing Reform Act of 1984. The government's contention is that under § 3551 a fine may be imposed in addition to any other sentence, and that as a term of probation the court could impose occupational restrictions on Fawer. Additionally, the government makes an argument that the suspension should be upheld under the court's inherent power.

The problem with the government's argument on this issue is that Fawer was not placed on probation. He was simply suspended from practicing law in the Middle District of Louisiana. As such, the government's lengthy argument concerning the Sentencing

17

Reform Act and occupational restrictions imposed as a condition of probation is misplaced.[9]

The Fifth Circuit has not specifically addressed the issue of occupational sanctions under § 401. However, a reading of the cases that have addressed this or a similar issue lead to the conclusion that § 401 does not provide for such a sanction. In *United States v. Stoneberger*, 805 F.2d 1391, 1394 (9th Cir. 1986), the Ninth Circuit determined that under the express language of § 401 a court could impose a fine or imprisonment but not a suspension since suspension was not mentioned in the statute. The Ninth Circuit stated that "the suspension cannot be supported by reference to section 401." *Id.* at 1394; *see also Ex Parte Robinson*, 86 U.S. 505, 512 (1873) (holding that a disbarment was not allowed under the contempt statute because it only provided for a fine or imprisonment).[10]

---

[9]The district court's judgment states "IT IS FURTHER ORDERED ADJUDGED AND DECREED that the respondent's admission to practice in the United States District Court for the Middle District of Louisiana is SUSPENDED for a period of one (1) year from this date." The court makes no mention of probation and does not impose any other condition of supervision upon Fawer or direct him to report to a probation officer.

[10]*But see United States v. Lespier*, 558 F.2d 624, 628 (1st Cir. 1977) (stating that "[s]anctions available to the court include the imposition of a fine and suspension from practice before the court.") The First Circuit makes this statement following a statement that the defendant's "conduct would have been punishable as criminal contempt under 18 U.S.C. § 401(3)." *Lespier*, 558 F.2d at 628. The government relies on *Lespier* as authority for a suspension sanction under § 401. However, this court is of the opinion that the statement in *Lespier* is dicta

One additional case relied upon by the government needs mention. In *United States v. Cutler*, 58 F.3d 825, 839 (2d Cir. 1995), the Second Circuit allowed a suspension to stand pursuant to the authority of the court to impose occupational sanctions when a defendant is actually placed on probation. However, the instant case is clearly distinguishable from *Cutler.* As noted previously, Fawer was not actually sentenced to a term of probation as was the defendant in *Cutler*, but rather, he was simply suspended from practicing in the Middle District of Louisiana. Accordingly, *Cutler* has no bearing on the issue in this case.

There is no precedent from any circuit that upholds a suspension under § 401 absent a sentence that includes a term of probation. Moreover, the language of § 401 provides for a sentence of a fine *or* imprisonment, with no mention of the possibility of a suspension from the practice of law. The court and the bar do have the power under other legal authority to suspend a lawyer from practice.

The government asks this court to look to the inherent power of the district court to suspend or disbar an attorney upon a finding of "bad faith" on the part of that attorney. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). Generally, the

---

and is contrary to the weight of authority going back as far as *Ex Parte Robinson*.

court must make a specific finding that the attorney's "conduct constituted or was tantamount to bad faith." *In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999) (quoting *Roadway*, 447 U.S. at 752). However, "when bad faith is patent from the record and specific findings are unnecessary to understand the misconduct giving rise to the sanction, the necessary finding of 'bad faith' may be inferred." *Id.* As conceded by the government, the court did not specifically invoke its inherent power to sanction Fawer. Since the district court did not invoke its inherent power or give Fawer notice that it was proceeding under such power, the court will not uphold the suspension under the court's inherent power.

Finally, on the issue of notice, defendant argues that he was not given notice that he could be suspended from the practice of law. Because the court finds it necessary to vacate that portion of the sentence with regard to the suspension, Fawer's argument concerning adequate notice is moot.

### V. CONCLUSION

For the foregoing reasons, this court concludes that the district court did not err in finding Fawer guilty of criminal contempt or in refusing to recuse on Specification No. 5. Accordingly, the judgment of the district court on those issues including the fines assessed against Fawer is AFFIRMED. However, that portion of the district court's sentence suspending Fawer's

20

admission to practice for a period of one year is VACATED.  Of course, the district court is free to proceed under its inherent power upon proper notice.

AFFIRMED in part and VACATED in part.