**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 94-5690

CLAYTON PERRY CROWE,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Bryson City.
Richard L. Voorhees, Chief District Judge.
(CR-94-32)

Argued: December 7, 1995

Decided: February 16, 1996

Before ERVIN, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Terry Goodwin Harn, Chapel Hill, North Carolina, for
Appellant. Deborah Ann Ausburn, Assistant United States Attorney,
Asheville, North Carolina, for Appellee. **ON BRIEF:** Mark T. Cal-
loway, United States Attorney, Charlotte, North Carolina, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

After a bench trial Clayton Perry Crowe was convicted of one count of criminal contempt, see 18 U.S.C. § 401(3), and was sentenced to six months imprisonment. He appeals his conviction on the grounds that (1) the evidence was insufficient and (2) that the district court failed to inquire as to his competency to stand trial. Finding no error, we affirm.

I.

On April 4, 1994, Crowe, who was already in state custody, was indicted on 17 counts of sending threatening mail to his wife, in violation of 18 U.S.C. § 876. As part of its trial preparation the government sought handwriting exemplars from Crowe. On April 29, 1994, FBI Special Agent James D. Russell visited Crowe in the Buncombe County Jail in Asheville, North Carolina, and asked him to provide the exemplars voluntarily. Crowe refused, and on May 11 the district court ordered Crowe to provide the exemplars.

Crowe, his lawyer, and Special Agent Russell met at the jail on June 14, 1994. Russell showed Crowe a copy of the court order, and (according to Russell) Crowe's lawyer "instructed Mr. Crowe that the order was valid and had to be complied with." Crowe refused.

On June 20, 1994, the government moved for an order to show cause why Crowe should not be held in contempt. The next day, at the conclusion of a hearing at which Crowe admitted that he had refused to provide the handwriting exemplars as ordered, the magistrate judge certified that Crowe was in contempt. The magistrate judge also said that Crowe "should be allowed to purge himself of any contempt order that the District Court enters by providing handwriting exemplars as ordered."

2

Crowe was brought before the district judge on September 7, 1994, for trial on the charge of criminal contempt. Crowe's counsel indicated to the judge that notwithstanding the criminal contempt charge, Crowe still claimed he had no duty to provide handwriting exemplars. After Crowe waived a jury, the case proceeded to trial before the district judge. Special Agent Russell testified that Crowe refused to comply with the court order that had been shown to him, even after his lawyer advised him to comply. Crowe testified that he refused to provide the exemplars because he believed doing so would violate his Fifth Amendment right against self-incrimination. He admitted that he saw and understood the court order. He claimed, however, that his lawyer told him that "refusing wouldn't hurt me either way because I am doing a sentence, a state sentence already" and that therefore the court had no effective power to punish him. The district judge found Crowe guilty of criminal contempt.

II.

Crowe argues that the evidence against him was insufficient to sustain a conviction for criminal contempt. In support of this argument Crowe claims he should have been given the opportunity to purge himself of his contempt (by providing the exemplars) after the magistrate judge certified his contempt. We disagree.

To support a conviction for criminal contempt, the government must establish beyond a reasonable doubt that the defendant "willfully, contumaciously, intentionally, with a wrongful state of mind, violated a decree which was definite, clear, specific, and left no uncertainty in the minds of those to whom it was addressed." Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d 123, 129 (4th Cir. 1977) (citations omitted). If the defendant makes a good faith effort to comply with a court order, he may not be convicted of criminal contempt. Id. On appeal, we must affirm if there is substantial evidence, viewed in the light most favorable to the government, to support the conviction. Glasser v. United States, 315 U.S. 60, 80 (1942).

Crowe's argument that the evidence was insufficient because he was not given an opportunity to purge himself of his contempt shows a fundamental misunderstanding of the difference between civil and

3

criminal contempt. Criminal contempt may not be purged. A person may purge himself of <u>civil</u> contempt because civil contempt proceedings are intended "to coerce the contemnor into compliance with court orders." <u>Buffington v. Baltimore County</u>, 913 F.2d 113, 133 (4th Cir. 1990), <u>cert</u>. <u>denied</u>, 499 U.S. 906 (1991). Once a person complies with the court order, the civil contempt sanction no longer is necessary to force compliance. Criminal contempt proceedings, however, serve a different purpose: "to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct." <u>Id.</u> Because earlier defiance is not cured by later compliance, criminal contempt sanctions are always available to punish past misconduct, even when civil contempt sanctions would be neither necessary nor effective.

Here the evidence shows that Crowe knew that the court was ordering him to give handwriting exemplars, that the court properly had power over him, that his lawyer told him that he must give the exemplars, and that he still refused to do so. Indeed, Crowe's claim that his lawyer told him that it didn't matter if he refused to comply (because, since he already was in jail, the court had no effective way to punish him) lends support to a finding that his refusal was willful and contumacious. At no time did Crowe ever make any good faith attempt to comply with the order.

Crowe's attempt to invoke his Fifth Amendment right against self-incrimination does not give him the right to disobey a valid court order requiring exemplars, which are non-testimonial evidence. In short, requiring a person to give handwriting samples does not violate the Fifth Amendment. <u>United States v. Mara</u>, 410 U.S. 19 (1973); <u>United States v. Dionisio</u>, 410 U.S. 1 (1973).

We conclude that the evidence was sufficient for the district judge to find Crowe guilty of criminal contempt.

III.

Crowe next claims that his conviction is invalid because the district court failed to inquire, <u>sua sponte</u>, as to his competency to stand trial. This claim also fails.

4

In the related (threatening mail) case Crowe sought to assert the insanity defense. In that case he moved, pro se , for a psychiatric evaluation. The government joined in the motion, and on June 21, 1994, a magistrate judge ordered Crowe to submit to an evaluation. A month later Crowe changed his mind and filed a motion asking the court to vacate its order. The magistrate judge denied this motion on July 25, 1994. Crowe's criminal contempt trial was held on September 7, 1994, before the results of the psychiatric evaluation were available. Crowe argues that because an evaluation had been ordered by the magistrate judge in the related case, but the results had not yet been received, the district judge here erred in going ahead with a trial on the criminal contempt charge.

We believe that the district judge was under no duty in this case to inquire, sua sponte, as to Crowe's competency. Even if the defendant's trial counsel fails to raise the issue, when a defendant has a history of "pronounced irrational behavior," the trial court's failure to assess the defendant's competency to stand trial can sometimes violate due process. Pate v. Robinson, 383 U.S. 375, 385-86 (1966). In such a case the court also may be required to seek expert opinion as to competency. Drope v. Missouri, 420 U.S. 162, 181-82 (1975). There are, however, "no fixed or immutable signs which invariably indicate the need for further inquiry to determine" competency. Id. at 180. In Pate there was ample evidence that the defendant suffered from a serious mental disorder. On several occasions he had been hospitalized for psychiatric reasons, and he had attempted suicide. Pate, 383 U.S. at 379-83. In addition, the Pate defendant may have suffered from an organic brain disorder as a result of his being struck in the head with a brick when he was seven or eight years old. Id. at 378. In Drope, it was held that the defendant's mid-trial suicide attempt should have put the trial court on notice to inquire further as to the defendant's competency. See also United States v. Mason, 52 F.3d 1286 (4th Cir. 1995) (court sua sponte should have held competency hearing on learning of defendant's suicide attempt and alcohol abuse).

Here, the "pronounced irrational behavior" that Crowe claims should have put the court on notice to conduct a competency hearing was the charge that he had allegedly sent a series of obsessive and threatening letters to his wife. This behavior does not qualify under the standard described in Pate and later cases interpreting it. See also

5

Godinez v. Moran, 113 S. Ct. 2680, 2688 n.13 (1993) ("a competency determination is necessary only when a court has reason to doubt the defendant's competence").

Nor did Crowe's behavior on the day of trial create any bona fide doubt as to his competency. See Fallada v. Dugger, 819 F.2d 1564, 1567-69 (11th Cir. 1987). A person is competent to stand trial if (1) he can "consult with his lawyer with a reasonable degree of rational understanding" and (2) he has a "rational as well as factual understanding of the proceedings against him." Penry v. Lynaugh, 492 U.S. 302, 333 (1989). Immediately before trial Crowe's lawyer represented to the district court that Crowe understood that he faced a criminal contempt charge and did not wish to have a jury trial on that charge. During the trial Crowe consulted with his lawyer from time to time. Crowe also testified. His testimony was coherent, and it establishes that Crowe understood that he was being tried because he would not give handwriting exemplars after receiving a court order to do so. All of this indicates that Crowe was capable of assisting his lawyer in his defense and that he had a rational understanding of the proceedings against him.

Finally, Crowe has come forward with no evidence that the psychiatric evaluation that was performed would have shown that he was incompetent to stand trial. He presumably was found competent to stand trial on the threatening mail charges, as he was convicted May 22, 1995, on twelve of those counts.

IV.

We are convinced that the evidence was sufficient to show that Crowe was guilty of criminal contempt and that the district court had no duty to inquire, sua sponte, as to his competency to stand trial. The conviction is affirmed.

AFFIRMED

6