UNITED STATES of America

v.

Jerome Frederick HEARD, Sr., Jerome Frederick Heard, Jr., Terrie Lynn Heard, Joy Lynne Haney and Steven Lloyd Haney.

Nos. 5:96MC7, 5:96MC8, 5:96MC10, 5:96MC11, 5:96MC12.

United States District Court, N.D. West Virginia.

June 25, 1996.

Lisa Grimes Johnston, Asst. U.S. Atty., William D. Wilmoth, U.S. Atty., Robert H. McWilliams, Jr., Asst. U.S. Atty., Wheeling, WV, for U.S.

Elgine H. McArdle, Musser & McArdle, LC, Wheeling, WV, for Jerome Frederick Heard, Sr. and Jerome Frederick Heard, Jr.

William A. Kolibash, Musser & McArdle, LC, Wheeling, WV, for Terrie Lynne Heard.

Harold M. Sklar, McNeer, Highland & McMunn, Clarksburg, WV, for Joy Lynne Haney and Steven Lloyd Haney.

### MEMORANDUM OPINION AND ORDER FINDING DEFENDANTS GUILTY OF CRIMINAL CONTEMPT

STAMP, Chief Judge.

#### I. *Procedural History*

On May 8, 1996, the Government filed its Application for an Order to Show Cause why each of the defendants should not be held in criminal contempt as a result of their failure to appear before the federal Grand Jury in the Northern District of West Virginia on April 4, 1996 pursuant to a subpoena. On May 21, 1996, this Court entered an Order to Show Cause pursuant to Fed.R.Crim.P. 42(b) which accepted the application of the Government and directed each defendant to appear for a hearing on June 17, 1996 to show cause why they should not be held in criminal contempt for refusing to obey a grand jury subpoena.

The Court adopted the application of the Government as its notice and statement of the essential facts constituting the criminal contempt charge. As part of its Order to Show Cause, this Court stipulated that the maximum sentence to be imposed upon the defendants would be imprisonment for six months or less or a fine of $5,000.00 or less. Because of the limitation on the possible sentence which these defendants might re-

ceive, this Court denied the motion of defendants Joy Lynne Haney and Steven Lloyd Haney for a jury trial. On June 17 and 18, 1996, this Court conducted a bench trial on these matters. Prior to conducting this trial, this Court conducted a hearing under Fed. R.Crim.P. 44(c) and obtained written waivers of conflict of interest from all the defendants in this case.[1]

This Court has reviewed the evidence received at trial and for the reasons set forth below concludes that each defendant should be found guilty of criminal contempt pursuant to Fed.R.Crim.P. 42(b), 18 U.S.C. § 401(3) and Fed.R.Crim.P. 17(g).

#### II. *Findings of Fact*

Pursuant to Fed.R.Crim.P. 23(c), this Court makes the following findings of fact:

1. On March 26, 1996, each defendant was personally served with a subpoena requesting his or her appearance and testimony before the federal grand jury of this Court, the United States District Court for the Northern District of West Virginia, in Wheeling, West Virginia on April 4, 1996. Service of each subpoena was made by IRS Special Agent Frank Klepadlo. (Government Exhibit Nos. (hereinafter "Gov. Ex. No.") 1, 2, 3, 4 and 10). Except for defendant Steven L. Haney, each subpoena directed the defendant to bring to the grand jury hearing "ANY AND ALL RECORDS REFLECTING RECEIPTS AND EXPENSES OF J & S BUSINESS FORMS AND IMPERIAL TRUST D/B/A GRANVILLE ASSOCIATES FOR THE TIME PERIOD 1/1/88 THROUGH 3/15/96." (Gov.Ex. Nos. 1, 2, 3, 4 and 10).

2. The regular grand jury for this Court was convened for a six-month period commencing on October 3, 1995 and ending on April 4, 1996. This grand jury ended on April 4, 1996 and was not extended beyond that date.

3. The matter about which these defendants were subpoenaed to appear on April 4, 1996 involved federal tax evasion charges

---

1. Defendants Jerome Frederick Heard, Sr. and Jerome Frederick Heard, Jr. are represented by attorney Elgine H. McArdle. Defendant Terrie Lynne Heard is represented by William A. Koli-

bash, a member of the same law firm as Ms. McArdle. Defendants Joy Lynne Haney and Steven Lloyd Haney are represented by attorney Harold M. Sklar.

against Steven Heard who is not a defendant in this proceeding.

4. Despite having accepted service of these subpoenas, none of the defendants appeared at the grand jury hearing on April 4, 1996 or on any other date during the regular grand jury session.

5. When they received the subpoenas, defendants appeared to understand the nature of the Grand Jury proceedings and the purpose of the subpoenas.

6. Service of the subpoenas was prearranged by the Government through an earlier conference between Steven Heard and IRS Agent Klepadlo.

7. The defendants did not resist or object to service of the subpoenas.

8. When defendants failed to appear before the grand jury on April 4, 1996 in Wheeling, West Virginia as subpoenaed, government agents reported this fact to the Office of the United States Attorney for this district, specifically Assistant United States Attorney Robert McWilliams, who was primarily conducting the grand jury hearing involving Steven Heard's tax evasion matters.

9. The United States Attorney did not file any motions to compel the attendance of the defendants or take any other formal steps to have these defendants brought before the grand jury on April 4, 1996. The United States Attorney did not request that the regular grand jury be extended for any period of time beyond April 4, 1996.

10. Each of the defendants mailed by certified mail return receipt requested to William D. Wilmoth, the United States Attorney for the Northern District of West Virginia, and Dr. Wally Edgell, the Clerk of Court for the United States District Court for the Northern District of West Virginia, a document entitled a "Non–Statutory Abatement" (Gov.Ex. Nos. 13, 14, 15, 16 and 17) (hereinafter "abatement forms.").

11. Defendants also served the abatement forms upon William D. Wilmoth and Dr. Wally Edgell by private process server.

12. The abatement forms that were sent by way of the United States Mail were received by United States Attorney William D. Wilmoth's Office and by Dr. Edgell on April 3, 1996. (Haney Exhibit Nos. 1 and 2; Gov. Ex. Nos. 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 17 and 18). The abatement forms sent to the United States Attorney were stamped as "received" in his office at 10:13 a.m. (Gov. Ex. Nos. 5, 6, 7, 8 and 11). Assistant United States Attorney McWilliams received these abatement forms or a copy thereof at the Wheeling Office of the United States Attorney sometime before noon on April 3, 1996.

13. The abatement forms that were served by way of a private process server were received by the Office of William D. Wilmoth on April 3, 1996 at 11:42 a.m. (Gov. Ex. No. 18).

14. Dr. Edgell also received the abatement forms through a private process server on April 3, 1996 at his office in Wheeling.

15. Upon receipt of the abatement forms from each defendant, Dr. Edgell, as Clerk of Court, testified that he assigned each document a "miscellaneous number" and filed each document under that number as is routinely done in any case when a document or paper is submitted to the Clerk and there is no criminal or civil case then pending to which the document or paper relates. Dr. Edgell testified that this would also be standard procedure for any paper submitted in connection with a grand jury proceeding. Dr. Edgell testified that he treated the papers simply as documents to be filed with this United States District Court under the above standard procedure and not as a "fake lawsuit." Dr. Edgell then contacted the Office of Counsel for the Administrative Office of the United States Courts and was advised not to answer the abatement forms and to contact that office if he needed further assistance.

16. Among other things, each abatement form bears the signature of the particular defendant and that defendant's thumb or finger print on or over the signature. It is styled "superior court, Harrison county, West Virginia" and each abatement form lists a particular defendant as a "Demandant" against Dr. Edgell as Clerk of Court and against Mr. Wilmoth as the United

States Attorney. Each document bears a "case number" as follows:

| | | |
|---|---|---|
| Jerome Frederick Heard, Sr. | 863–191–992 | (Gov. Ex. No. 7) |
| Jerome Frederick Heard, Jr. | 863–191–993 | (Gov. Ex. No. 11) |
| Terrie Lynn Heard | 863–191–995 | (Gov. Ex. No. 5) |
| Joy Lynne Haney | 863–191–996 | (Gov. Ex. No. 6) |
| Steven Lloyd Haney | 863–191–997 | (Gov. Ex. No. 8) |

Each "case number" coincides with the mail return receipt number on the document received by Dr. Edgell (See Haney Ex. Nos. 1 and 2).

17. Each abatement form states, among other things, that with respect to the subpoena to testify before the grand jury, the abatement is issued "pursuant to common law rules" against Edgell and Wilmoth who are alleged to be **"acting Alien Enemy agents** of a statutorily created, foreign de facto corporation, known as THE UNITED STATES OF AMERICA" and that these "agents are imposing provisions of a contract counter to public morals." (Gov.Ex. Nos. 5, 6, 7, 8 and 11, p. 1).

Each abatement form then states that the subpoenas to testify before the grand jury dated March 20, 1996, were "received, but are not accepted," were "refused without dishonor **and without recourse to me,** and are returned, herewith, because they are irregular and unauthorized ..." (Gov. Ex. Nos. 5, 6, 7, 8, and 11, p. 2). Numerous reasons for the refusal are then set forth, including the following reasons: "[y]our papers do not have upon their face My **full** Christian Appellation **in upper and lower case letters**"; "[y]our papers allege violations of law, foreign to My Venue ..."; "[y]our office is not established in the West Virginia Constitution"; "[y]our papers are unintelligible to Me; based upon the following: They are not written in Proper English ..."; "[y]our papers have no Warrant in Law and are not Judicial in Nature"; and "[y]our papers fail to disclose any legal connection between Myself and your office...." (Gov.Ex. Nos. 5, 6, 7, 8 and 11), pp. 2 and 3). Each abatement form then recites that, among other things, the "papers" are being returned as they are "concerning an unlawfully imposed contract" which "imposes upon My Right of Privacy;" and are "harassment and a public nuisance." (Gov.Ex. Nos. 5, 6, 7, 8 and 11, pp. 2–3).

Further, the alleged **"Alien Enemy agents,"** it is said, are "attempting to use a form of money inimical to public welfare according to the standard set by the West Virginia Constitution of 1872...." (Gov. Ex. Nos. 5, 6, 7, 8 and 11, p. 3). The "defendants" are then directed to either "abate the matter of (returned papers), or file a written response, within (30) days of the release of this Non–Statutory Abatement, showing why the abatement should not be imposed.... **Failure to respond in time prescribed, herein, will result in a Default and Default Judgement and subject Defendants to Civil and/or Criminal Liabilities in pursuant of International Law and The Law of Nations."** (Gov.Ex. Nos. 5, 6, 7, 8 and 11, p. 4). The grand jury subpoena of each defendant is attached to the corresponding abatement form and over each subpoena there is handwritten "Refused without dishonor and without recourse to Me." (Gov. Ex. Nos. 5, 6, 7, 8 and 11). A similar statement is handwritten on the attachment to the grand jury subpoena entitled *"ADVICE TO GRAND JURY WITNESSES"* as well as upon other attachments advising the defendants, as witnesses, of travel allowances and possible hotel or motel accommodations in the Wheeling area. (Gov. Ex. Nos. 5, 6, 7, 8 and 11).

18. The subpoena for defendant Terrie Lynn Heard misspelled her name as "Terry L. Heard." (Gov.Ex. No. 4).

19. On April 4, 1996, a four-count indictment for tax evasion was returned against Steven Heard.

20. A search of the court records in the Circuit Court of Harrison County, West Virginia and the Magistrate Court of Harrison County, West Virginia by Internal Revenue Service Special Agent Donald L. Benninger on June 4, 1996 reflects that no suits were filed by Jerome Frederick Heard, Sr., Jerome Frederick Heard, Jr., Terrie Lynn Heard, Joy Lynne Haney or Steven Lloyd Haney against either Dr. Wally Edgell or United States Attorney William D. Wilmoth. (See Gov.Ex. No. 19).

21. Pursuant to Fed.R.Evid. 201, this Court has taken judicial notice that the Circuit Court of Harrison County and the Magistrate Court of Harrison County are the

only two courts situated within that county in West Virginia (See Gov.Ex. No. 9).

22. There is no "Superior Court of Harrison County" existing in West Virginia or recognized under West Virginia law.

23. Defendant Jerome Frederick Heard, Sr. testified that he accepted service of his grand jury subpoena on the morning of March 26, 1996. He read it later that evening. He then recalled receiving a newsletter published by a group called American Institute for Research which discussed the subject of a non-statutory abatement (Heard Ex. No. 1, pp. 3, 9). He testified that he felt the article was applicable to his subpoena. He called the American Institute for Research which, in turn, referred him to a group or association known as the American Jural Society located in California. He then telephoned that group and explained the receipt of the subpoena to a member of that group. The American Jural Society sent a copy of the abatement form to Mr. Heard, Sr. by facsimile. Mr. Heard, Sr. testified that he was instructed by The American Jural Society to change only the court name, the defendant's name, and the names of the persons to whom the abatement should be directed and to change nothing else in the abatement form. He followed the instructions of the American Jural Society "to the letter."

Mr. Heard, Sr. stated that he was told the abatement form should refer to the "superior court" of Harrison County. He stated that when he filed the abatement form he thought he was filing "a document to quash the subpoena." The other defendants, members of the Heard family by blood or marriage, were instructed by Mr. Heard, Sr. to file an identical type of form, which each of them did. These defendants were also instructed by Mr. Heard, Sr. to write the refusal notations across certain pages included with the grand jury subpoenas, which they each did.

The individuals who Mr. Heard, Sr. talked with at the American Jural Society were not lawyers. Mr. Heard, Sr. never contacted the United States Attorney between the time he received the grand jury subpoena and the time he filed the Non–Statutory Abatement, nor did any other defendant. Mr. Heard, Sr.

testified that he knew what the grand jury subpoena was and recognized its importance. Mr. Heard, Sr. said there was nothing about the subpoena that was confusing to him or that looked unlawful or unreasonable to him.

24. Defendant Jerome Frederick Heard, Jr. stated that he read the subpoena and understood it. He "looked through" the abatement form and "didn't read it exactly." He described the abatement form as a "canned form" or "canned document."

25. Defendant Terrie Lynn Heard is the daughter-in-law of Jerome Frederick Heard, Sr. and the wife of Steven Heard. She testified that she received the abatement form from her father-in-law, Mr. Heard, Sr. She looked at the front page of the form and did not read the form in its entirety. The form was "disturbing" to her but she signed it because that was what she was supposed to do and because she was instructed to do so by her father-in-law.

26. Defendant Steven Lloyd Haney, son-in-law of Mr. Heard, Sr. and husband of defendant Joy Lynne Haney, is a supervisor for United Parcel Service at its Fairmont, West Virginia office. Mr. Haney testified that prior to filing the abatement document, Mr. Haney called the United States Attorney in Wheeling at the "800 number" set forth on the subpoena but was told that Mr. Wilmoth was not in and that he could call back the next day. Mr. Haney never again called the United States Attorney's Office.

27. Mr. Haney further stated that, while he was willing to testify at the grand jury, he was uncomfortable about testifying against his wife's family and, also, that on the date of the scheduled testimony, his wife, who is pregnant, had a scheduled appointment with her physician concerning some problems with her pregnancy. Mr. Haney stated that he signed the abatement form provided by his father-in-law but did not read it before signing. While he had a brief discussion with an attorney friend about the term "abatement," he never disclosed to his attorney friend the context in which the term was relevant to his situation, nor did he explain to the attorney that he had been served with a grand jury subpoena. Steven Haney stated that he did

not intend to do anything "wrong" by filing the abatement form.

28. Defendant Joy Lynne Haney, wife of Steven Haney and daughter of Jerome Frederick Heard, Sr., also received the abatement form from her father. She signed it and affixed her thumb print on her signature, without looking at the document. She signed it because she was told by her father to do so. She stated that she understood that the document meant that she would not have to appear before the Grand Jury and that she could go to her doctor's appointment on April 4, 1996 without any problem. She never mentioned the doctor's appointment to Agent Klepadlo, who served the subpoena, and never called the Office of the United States Attorney about the apparent scheduling conflict.

29. None of the defendants in this proceeding ever consulted or retained any lawyer about the grand jury subpoenas until after the order to show cause had been entered and served and this matter had been scheduled for hearing.

30. Defendant Jerome Frederick Heard, Jr., Terrie Lynn Heard and Joy Lynne Haney, have all worked at one time or another and in some capacity with or for Jerome Frederick Heard, Sr. in a business which Mr. Heard, Sr. has owned or operated since 1978. This business, Jerry Heard and Associates, designs and "specs" computer forms, "snapout" forms, letterheads, envelopes and other related materials.

31. Assistant United States Attorney Michael Stein testified that at the time that the grand jury subpoenas were served and accepted and at the time of the April 4, 1996 grand jury, none of the defendants in this proceeding were grand jury "targets" in the view of the Office of the United States Attorney for the Northern District of West Virginia.

32. The contents of each exhibit admitted at trial are also adopted as part of the findings of fact.

### III. Conclusions of Law

1. Title 18, United States Code, Section 401 provides, in pertinent part:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

. . . . .

(3) Disobedience or resistance to its unlawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401 (1996).

2. Federal Rule of Criminal Procedure 17(g) provides:

(g) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued or of the court for the district in which it issued if it was issued by a United States magistrate judge.

Fed.R.Crim.P. 17 (1996).

3. Criminal contempt proceedings have a different purpose than civil contempt proceedings in that criminal contempt seeks "to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct...." *Buffington v. Baltimore County, Md.*, 913 F.2d 113, 133 (4th Cir.1990), *cert. denied*, 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991).

■ 4. "Because earlier defiance is not cured by later compliance, criminal contempt sanctions are always available to punish past misconduct, even when civil contempt sanctions would be neither necessary nor effective." *United States v. Crowe*, unpublished, 1996 WL 67223, * *2 (4th Cir. Feb. 16, 1996).[2]

5. Criminal intent is, of course, an essential element to an offense under 18 U.S.C. § 401(3). This intent has been defined by the Fourth Circuit as "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *United States v. Marx*, 553 F.2d 874, 876 (4th Cir.

2. Pursuant to Fourth Circuit Local Rule 36(c), unpublished opinions are not binding precedent in this circuit. However, because the above-mentioned case is directly applicable to this case, this Court finds it is proper to call the parties' attention to the Fourth Circuit's previous comments.

1977) (citing *United States v. Seale*, 461 F.2d 345, 368–69 (7th Cir.1972)); *see also United States v. Warlick*, 742 F.2d 113, 117 (4th Cir.1984); *In re Chaplain*, 621 F.2d 1272, 1277 (4th Cir.1980), *cert. denied*, 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980).

6. "Of course, an actual design to subvert the administration of justice is a more grievous and perhaps more culpable state of mind, but proof of such an evil motive is unnecessary to establish the required intent." *Marx*, 553 F.2d at 876) (quoting *Seale*, 461 F.2d at 368–69).

 7. In order to sustain its burden of proving the charge of contempt under 18 U.S.C. § 401(3) as to each defendant the government must establish beyond a reasonable doubt each of the following facts: First, that the United States District Court for the Northern District of West Virginia delivered to each of the defendants an order by subpoena to testify (and in the case of defendants Jerome Frederick Heard, Sr., Jerome Frederick Heard, Jr., Terrie Lynn Heard and Joy Lynne Haney, to bring certain documents) before the grand jury of that court on April 4, 1996; second, that these defendants disobeyed or disregarded those orders; and finally, that each defendant acted willfully and knowingly in disobeying this Court's order. *Leonard B. Sand, John S. Siffert, Walter P. Loughlin and Steve A. Reiss, Modern Federal Jury Instructions*, 20–27 to 20–30 (Matthew Bender 1995).

8. In this case, it does not seem to be contested that the grand jury subpoenas were served upon each of the defendants and accepted by them at the time of service. It also appears clear that these subpoenas were lawfully issued, were lawful and proper in every respect and did not violate any constitutional or other legal right of the defendants. Therefore, this Court finds that this first element of the offense has been established.

9. It also appears that each defendant disobeyed or disregarded these subpoenas since they each failed to appear before the grand jury on the designated date of appearance, April 4, 1996. Therefore, this second element has been established.

10. The defendants deny that they had the requisite criminal intent or that they acted wilfully in disobeying their subpoena. It is defendants' position that they each made a good faith effort to quash their particular subpoena by the submission of the "Non–Statutory Abatements."

 11. However, good faith is only a defense to the offense of contempt where the defendant has made a reasonable effort to comply with the Court's order but has failed because of the indefiniteness of the order or some other inability to do so. It is not a defense where the defendant has refused to comply with the order he or she is charged with violating. *United States v. Ray*, 683 F.2d 1116, 1126 (7th Cir.1982); *see also Richmond Black Police Officers Assoc. v. City of Richmond*, 548 F.2d 123 (4th Cir.1977).

 12. It is the defendants' position that the document they sent to this Court but which was styled as being in the "Superior Court of Harrison County, West Virginia," a court unknown in law, was in some fashion a motion to quash the subpoena issued in this Court. First, this Court finds this position to be a dubious one. The unwarranted broadside attacks upon the United States Attorney and Clerk of this Court, even if construed as a motion to quash were not under the circumstances "promptly made" as required under Fed.R.Crim.P. 17(c) and do not even suggest, much less prove, to this Court, or any other, that compliance would be "unreasonable or oppressive" as is also required under Rule 17(c). Further, the filing of a motion to quash, even if properly and promptly made, does not kill the subpoena. *Taylor v. United States*, 221 F.2d 809, 810 (6th Cir.1955), *cert. denied*, 350 U.S. 834, 76 S.Ct. 69, 100 L.Ed. 744 (1955). A motion to quash would merely hold the subpoena in abeyance until the motion was decided. However, this Court cannot find, and does not believe that it was reasonable for any defendant to assume that the abatement form he or she sent to Mr. Wilmoth or Dr. Edgell was a proper means of seeking the permission of this Court for them not to appear at the April 4, 1996 grand jury hearing. Further, in the case of the Haneys, Mr. and Mrs. Haney failed to even set forth in

their so-called "motion to quash" the real reason they now say compelled them to seek permission to not attend the grand jury hearing, that is, that Mrs. Haney had a doctor's appointment on April 4, 1996 and Mr. Haney wanted to accompany her.

Defendant Heard, Sr. simply followed a form sent to him by the group called The American Jural Society and there is no evidence that he ever explained to the Society the particular nature of his or the other defendants' subpoenas. This Court believes that his reliance upon this form and his submission of the abatement form was entirely unreasonable. Mr. and Mrs. Haney and Ms. Heard testified that they never read the abatement form they signed and, therefore, could not possibly be aware of its contents. These defendants and Mr. Heard, Jr. acted unreasonably in blindly following Mr. Heard, Sr. and in signing the "canned" form which they either did not read or the contents of which they did not understand.

13. Each of the defendants impressed this Court during the bench trial as being intelligent and educated individuals who are familiar with business practices, even though none of these defendants are, of course, trained in the law.

14. This Court concludes as a matter of law that it was unreasonable for the defendants to expect the Government to respond to a document filed as a miscellaneous matter in this Court. As Dr. Edgell testified, miscellaneous numbers are assigned to documents as an administrative policy when the paper does not correspond with or apply to any other matter or when the papers relate to a grand jury proceeding. Accordingly, the Government could not have been expected to treat the abatement forms as motions to quash and had no duty to file a motion to compel or request a hearing before this Court concerning the abatement forms which were really directed toward a non-existent Superior Court of West Virginia, not this Court.

15. For these reasons, this Court finds the acts of each of the defendants were volitional ones done by individuals who either knew or should reasonably have been aware that their conduct was wrongful, that a "good faith" defense does not apply and that the third element of the offense has been established.

16. In addition, in response to a point raised by counsel for defendants Haney during closing statements, this Court finds that the Application of the Government for a Show Cause Order filed on May 8, 1996 was proper under Fed.R.Crim.P. 42(b) in that it adequately stated the essential facts constituting the criminal contempt and described it as such.

17. Any conclusion by this Court which is not a conclusion of law shall be deemed a finding of fact.

### IV. *Conclusion*

Because the Government has proved beyond a reasonable doubt that the defendants, Jerome Frederick Heard, Sr., Jerome Frederick Heard, Jr., Terrie Lynn Heard, Joy Lynne Haney and Steven Lloyd Haney, willfully and intentionally violated 18 U.S.C. § 401(3), this Court hereby finds and adjudges each defendant GUILTY, beyond a reasonable doubt, of the charges contained in the government's application. The United States Probation Office is DIRECTED to prepare a presentence report in accordance with this opinion and the other proceedings which have taken place in these criminal actions with regard to the defendants.

IT IS SO ORDERED.

The Clerk is directed to transmit copies of this memorandum opinion and order to defendants, to counsel of record herein and to the United States Probation Office.